**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| LETITIA A. JAMES, | )    Case No.: 2:25-CR-00122-JKW |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

**BRIEF OF *AMICUS CURIAE* BY PROTECT DEMOCRACY PROJECT IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS BASED ON VINDICTIVE AND SELECTIVE PROSECUTION**

Victor M. Glasberg (Va. Bar No. 16184)
Abigail S. Grand (Va. Bar No. 100578)
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
Tel: (703) 684-1100
Fax: (703) 684-1104
vmg@robinhoodesq.com
AGrand@robinhoodesq.com

*Counsel for Amicus Curiae Protect Democracy Project*

Kristy Parker*
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, D.C. 20006
Tel: (202) 579-4582
Fax: (202) 769-3176
kristy.parker@protectdemocracy.org

Rachel Goodman*
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
Fax: (202) 769-3176
rachel.goodman@protectdemocracy.org

*\*Pro Hac Vice Forthcoming*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES .......................................................................................... iii

INTEREST OF AMICUS............................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT................................................................................................................. 4

    I.   The government has engaged in a pattern of vindictive and retaliatory criminal investigations and prosecutions that depart from the laws and procedures governing federal criminal prosecutions. ........................................................................................................... 4

        A.  The administration has directed criminal investigations and prosecutions of multiple individuals who have publicly opposed administration policies or who have otherwise been directly targeted by President Trump. ........................................................................... 5

            1.   Public comments on criminal investigations ..................................................... 9

            2.   Unlawful appointments of United States Attorneys ..................................... 15

            3.   Disregard of and punishment for dissenting judgments by DOJ personnel .............. 16

                a)   Resignation of the career Criminal Chief in advance of the indictment of Kilmar Abrego Garcia and the firing of career officials who made truthful representations to courts in connection with his removal to El Salvador.................................... 18

                b)   Firing of prosecutors who advised against indicting former FBI Director James Comey ........................................................................................................... 18

                c)   Firing of the United States Attorney for the Western District of Virginia for resisting indictments of FBI officials ........................................................... 19

            4.   Rebukes by judges ....................................................................................... 19

                a)   Abrego Garcia .......................................................................................... 20

                b)   Mayor Ras Baraka..................................................................................... 21

                c)   Congresswoman LaMonica McIver..................................................... 22

                d)   Other cases in which judges have declined to apply the presumption of regularity... ....................................................................................................................22

    II.  The Trump administration's pattern of retaliatory and irregular conduct supports Ms. James' claim that the charges against her are vindictive and counsels against judicial deference. ................................................................................................................. 23

        A.  The administration's pattern of retaliatory prosecutions supports Ms. James' motion. 23

        B.  The administration should not get the benefit of "presumption of regularity" deference. ....................................................................................................................25

CONCLUSION............................................................................................................ 26

## TABLE OF AUTHORITIES

**Cases**

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ................................................................. 17

*Coffin v. United States*, 156 U.S. 432 (1895) ............................................................... 9

*Irvin v. Dowd*, 366 U.S. 717 (1961) ............................................................................. 9

*United States Chemical Foundation, Inc.*, 272 U.S. 1 (1926) ................................. 15, 25

*United States v. Abrego*, 787 F. Supp. 3d 830 (M.D. Tenn. 2025) ............................... 20

*United States v. Abrego*, No. 3:25-CR-00115, 2025 WL 2814712 (M.D. Tenn. Oct. 3, 2025) .. 20, 21

*United States v. Abrego*, No. 3-25-cr-00115 (M.D. Tenn. Oct. 27, 2025) ................... 21

*United States v. Armstrong*, 517 U.S. 456 (1996) ............................................. 2, 25, 26

*United States v. Batchelder*, 442 U.S. 114 (1979) ........................................................ 1

*United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) ................................................................................. 16

*United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) ......... 16

*United States v. Koubriti*, 305 F.Supp. 2d 723 (E.D. Mich. 2003) ............................... 21

*United States v. Ramirez, et al.*, No. 5:25-cr-264-SSS, 2025 WL 3019248 (C.D Cal. Oct. 28, 2025) ................................................................................. 16

*United States v. Wilson*, 262 F.3d 305 (4th Cir. 2001) ............................................... 24

*Wayte v. United States*, 470 U.S. 598 (1985) ....................................................... 16, 26

*Wells v. Murray*, 831 F.2d 468 (4th Cir. 1987) ............................................................. 9

**Statutes**

28 U.S.C. § 516 ............................................................................................................ 25

28 U.S.C. § 530B ........................................................................................................... 9

28 U.S.C. § 546(d) ...................................................................................................... 15

28 U.S.C. § 5547 ......................................................................................................... 25

**Other Authorities**

ABA Model Rule 3.8 ................................................................................................ 10, 17

Alan Z. Rozenshtein, *What Happens When Courts Can't Trust the Executive Branch?* Lawfare (Apr. 10, 2025) ................................................................................. 16

Daphna Renan, Presidential Norms and Article

II, 131 Harv. L. Rev. 2187, 2207-2215 (June 2018)..................................................... 10

Ethan Leib, Jed Handelsman Shugerman and Andrew Kent, *Faithful Execution and Article II*,
    132 Harv.L.Rev. 2111 (June 2019). ...................................................................... 2

Justice Manual, 1-7000 et seq........................................................................................ 9

Justice Manual, 9-27.00 et seq.................................................................................. 1, 17

**Rules**

Federal Rule of Evidence 404(b) .............................................................................. 24

**Constitutional Provisions**

U.S. Const., Article II, § 2 ....................................................................................... 15

U.S. Const., Article II, § 3 .................................................................................... 1, 25

## INTEREST OF *AMICUS*[1]

Protect Democracy Project ("Protect Democracy") files this brief in support of Defendant

Letitia James out of concern about the weaponization of federal law enforcement authority.

Protect Democracy is a nonpartisan, nonprofit organization dedicated to preventing American

democracy from declining into a more authoritarian form of government. Politicization of

institutions like the Department of Justice ("DOJ") is a hallmark of authoritarianism, particularly

when it is deployed to quash political opposition and dissent. For that reason, since its founding

in 2017, Protect Democracy has published research and analysis, engaged in legislative

advocacy, and filed amicus briefs aimed at promoting and protecting DOJ independence.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The traditional mission of the United States Department of Justice is to pursue

evenhanded law enforcement in a manner divorced from partisan political considerations.[2] Law

enforcement independence from partisan politics is, in turn, a central component of democratic

government.[3] Under Article II of our constitution, the executive branch's authority to enforce the

law is exercised subject to the president's duty, and that of his subordinates, to "take care that the

laws be faithfully executed." U.S. Const., Article II, § 3, cl. 2. While executive power is

undoubtedly robust, it remains cabined by constitutional limits. *See United States v. Batchelder*,

442 U.S. 114, 125 (1979) (a prosecutor's discretion is "subject to constitutional constraints").

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than *amicus* contributed money to fund this brief's preparation or submission.

[2] See Justice Manual, 9-27.00 et seq., Principles of Federal Prosecution.

[3] Steven Levitsky and Daniel Ziblatt, How Democracies Die 78–79 (Crown, 2018).

The Take Care Clause thus creates a fiduciary duty to act in the public interest and not in the president's personal or partisan interests.[4]

Courts have given prosecutors broad deference — a so-called "presumption of regularity" — in exercising their "core executive constitutional function." *See United States v. Armstrong*, 517 U.S. 456, 464–65 (1996). However, that deference is rooted in the assumption that they are acting in furtherance of their fiduciary duty and following procedures and laws consistent with it. When prosecutors abuse the law enforcement power to punish the president's political enemies and quash dissent, the presumption should not apply.

The prosecution of New York Attorney General Letitia James is an improper and democracy-threatening weaponization of law enforcement, as demonstrated by her brief supporting her motion to dismiss the indictment on grounds of vindictive and selective prosecution. *Amicus* writes to make the following additional points.

*First*, the indictment of Ms. James sits within a larger pattern of prosecutions in which the DOJ under this administration has used its law enforcement powers to retaliate against its perceived political opponents. In short, the Trump administration has repeatedly targeted for criminal investigation and prosecution individuals who align with the opposition political party, who publicly oppose the administration's policies or have done so in the past, who have taken official action against President Trump, or are otherwise perceived as opponents of the president or his administration. These investigations and prosecutions have likewise each been characterized by a series of departures from regular order – the laws and procedures that govern and guide federal criminal prosecutions.

---

[4] Ethan Leib, Jed Handelsman Shugerman and Andrew Kent, *Faithful Execution and Article II*, 132 Harv.L.Rev. 2111 (June 2019).

For starters, President Trump and his political appointees have made numerous inappropriate public comments in connection with the investigations and prosecutions that are inconsistent with the constitutionally guaranteed presumption of innocence and that overtly reveal their vindictive and retaliatory motivation. These include direct public calls by the president for the prosecution of people he perceives as opponents and public statements by the president and his political appointees impugning the character of potential subjects and proclaiming their guilt before trial. *See infra* 9-15. In addition, President Trump has sought to evade advice and consent of the Senate and court oversight to appoint United States Attorneys who are perceived as willing to do the president's personal bidding at the expense of their "take care" duties. *See infra* 15–16. And finally, President Trump and his political appointees have disregarded the legal advice of professional Department of Justice prosecutors and punished them for dissenting against pursuing investigations and seeking charges in cases not supported by sufficient evidence. *See infra* 16–19. This irregular conduct has collectively resulted in a series of extraordinary rebukes from federal courts. *See infra* 19–22.

*Second*, the numerous instances in which the administration has targeted opponents for prosecution in direct response to President Trump's calls to do so, all while tarring the defendants with prejudicial public statements and overriding the judgment of professional prosecutors, support the position that improper motives underpin the James indictment. The administration's many instances of disregard for procedural regularity likewise give courts no reason to presume prosecutorial decisions are being undertaken in accordance with its "take care" duties.

For these reasons and those she offers in her own motion, Ms. James' indictment should be dismissed. But the implications of her wrongful prosecution reverberate far beyond this case

and pose a grave danger to the fundamental rights forming the bedrock of our democratic system of government. It is out of deep concern for our democracy that *Amicus* offers this brief for the court's assistance.

## **ARGUMENT**

I.   The government has engaged in a pattern of vindictive and retaliatory criminal investigations and prosecutions that depart from the laws and procedures governing federal criminal prosecutions.

President Trump ran for office in 2024 on a promise to use federal law enforcement as a tool for seeking retribution against his perceived political opponents.[5] Since commencing his second term in January 2025, President Trump's Department of Justice appointees have moved to fulfill that promise. In addition to the James indictment, the administration has launched multiple criminal investigations and prosecutions of individuals who exercised their First Amendment rights to criticize or oppose the president or his policies and others he has publicly singled out as his perceived opponents. Several of these followed specific directives from the president. In doing so, this administration's DOJ has systematically departed from the longstanding laws, rules, and norms designed to ensure that prosecutors are acting in accordance with evenhanded and nonpartisan enforcement principles and that persons accused of crimes receive the full measure of protections set forth in the Bill of Rights.

---

[5] Tom Dreisbach, *Trump has made more than 100 threats to prosecute or punish perceived enemies*, NPR (Oct. 22, 2024), https://www.npr.org/2024/10/21/nx-s1-5134924/trump-election-2024-kamala-harris-elizabeth-cheney-threat-civil-liberties.

A. The administration has directed criminal investigations and prosecutions of multiple individuals who have publicly opposed administration policies or who have otherwise been directly targeted by President Trump.[6]

The following is a non-exhaustive list of cases involving individuals the Trump administration has targeted for prosecution after they expressed opposition to President Trump or his policies or after they took action against him in their official capacities:[7]

a. **Kilmar Abrego Garcia:** Abrego Garcia, an undocumented immigrant from El Salvador, was deported in March 2025 in violation of a court order. Department of Justice attorneys admitted that Abrego Garcia was deported in error in response to a lawsuit Abrego Garcia filed against the Trump administration. Following the lawsuit and his case being championed by elected Democrats, Abrego Garcia was arrested on June 6, 2025, on charges DOJ had previously declined.[8] Deputy Attorney General Todd Blanche thereafter acknowledged that the criminal investigation had commenced after Abrego Garcia prevailed in his challenge to removal. On October 3, 2025, the District Court in the criminal case held that Abrego Garcia had established a reasonable likelihood that the prosecution was vindictive and granted discovery.[9] On October 27, 2025, the court ordered DOJ and DHS to refrain from making prejudicial statements.[10] Both President Trump and DHS officials issued prejudicial public statements on Abrego Garcia's case, as described below.

---

[6] *Amicus* takes no position on whether the evidence in any of the listed cases amounts to the probable cause necessary to secure an indictment or is sufficient to sustain a conviction by a jury beyond a reasonable doubt. Our focus is on the executive branch's compliance, or lack thereof, with the constitutional provisions, laws, and internal guidelines that govern criminal investigations and prosecutions and whether the president and his appointees have exhibited animus toward the subjects of the investigations.

[7] Protect Democracy, *Tracking retaliatory use of arrests, prosecutions, and investigations by the Trump administration*, https://protectdemocracy.org/work/retaliatory-action-tracker/.

[8] *U.S. v. Abrego Garcia*, 3:25-cr-00115 (M.D. Tenn. Jun. 6, 2025) ECF 6, https://www.courtlistener.com/docket/70476164/6/united-states-v-abrego-garcia/.

[9]*U.S. v. Abrego Garcia*, 3:25-cr-00115 (M.D. Tenn. Oct. 3, 2025) ECF 138, https://www.courtlistener.com/docket/70476164/138/united-states-v-abrego-garcia/.

[10] Jordan Rubin, *Judge warns against Trump officials' 'troubling' remarks about Kilmar Abrego Garcia*, MSNBC (Oct. 28, 2025) https://www.msnbc.com/deadline-white-house/deadline-legal-blog/kilmar-abrego-garcia-vindictive-doj-dhs-officials-rcna240240

b. **Judge Hannah Dugan**: On April 25, 2025, Judge Dugan was publicly arrested and charged for allegedly concealing an undocumented person and obstruction of justice.[11] The arrest occurred a week after Judge Dugan declined to cooperate with federal agents seeking to arrest an undocumented man who was present at the Milwaukee County Courthouse for a proceeding before her. The charges against Judge Dugan were accompanied by prejudicial public statements by the Attorney General and FBI Director, as described below.[12] The charges were also accompanied by an extraordinary arrest of Judge Dugan at her courthouse, a public "perp walk," and the posting by the FBI Director of a photo of Judge Dugan in handcuffs.[13]

c. **Mayor Ras Baraka**: On May 9, 2025, Baraka, the Democratic Mayor of Newark, New Jersey, was arrested and detained by federal officials for attempting to conduct oversight of an ICE facility after having publicly criticized the conditions there. Newly released body camera evidence submitted in LaMonica McIver's federal court case reveals a special agent saying "We are arresting the mayor right now, per the deputy attorney general of the United States. Anyone that gets in our way, I need you guys to give me a perimeter so I can cuff him."[14]

d. **Rep. LaMonica McIver**: On June 10, 2025, McIver, a Democratic Congresswoman from New Jersey was indicted for allegedly impeding and interfering with ICE officers at the same facility where Mayor Baraka was arrested.[15] Like Mayor Baraka, Rep. McIver had been vocally critical of the Trump administration's immigration enforcement policies and the conditions at the facility she was attempting to enter. Both President Trump and DHS issued prejudicial public statements on McIver's case, as described below. Several of these were social media posts that the court ordered be taken down.

---

[11] Hannah Rabinowitz, Michael Williams and Devan Cole, *Wisconsin judge arrested and charged in federal court for allegedly obstructing immigration agent*, CNN (Apr. 25, 2025), https://www.cnn.com/2025/04/25/politics/fbi-director-wisconsin-judge-arrested.

[12] Jason Lalljee, *"Deranged" Milwaukee judge's arrest a warning sign to others, Bondi says*, Axios (Apr. 25, 2025), https://www.axios.com/2025/04/25/hannah-dugan-trump-bondi-fbi-arrest.

[13] Henry Redman, *Bipartisan group of judges criticizes Milwaukee judge's arrest letter to AG*, Wisconsin Examiner (May 6, 2025), https://wisconsinexaminer.com/briefs/bipartisan-group-of-judges-criticize-milwaukee-judges-arrest-in-letter-to-ag.

[14] Video posted by NJ.com, YouTube, Newly released bodycam footage reveals who really ordered the arrest of Newark's mayor (Sep. 30, 2025) youtube.com/watch?time_continue=2&v=iyVjV5WmLjk&embeds_referring_euri=https%3A%2F%2Fwww.nj.com%2Fessex%2F2025%2F09%2Fnew-bodycam-footage-reveals-who-really-ordered-the-arrest-of-newarks-mayor.html.

[15] *U.S. v. McIver*, 2:25-cr-00388, (D.N.J. Jun. 20, 2025) ECF 12, https://www.courtlistener.com/docket/70515005/12/united-states-v-mciver/.

6

e.  **James Comey**: On September 26, 2025, former FBI Director Comey was indicted on charges of making a false statement to Congress and obstruction of an investigative proceeding before Congress. A few days prior to his indictment, President Trump directed the Attorney General to take action against Comey immediately.[16] During Comey's tenure as FBI Director, he oversaw the investigation into Russia's interference with the 2016 election. President Trump fired Comey from that position in 2017 due in part to that investigation, which Trump found to be adversarial and to hinder his ability to govern.[17] President Trump issued prejudicial public statements on Comey's case, as described below.

f.  **Brad Lander**: On September 18, 2025, Lander, the Democratic Comptroller of New York City, was arrested by federal agents while attempting to conduct oversight of an ICE holding center and charged with a misdemeanor.[18] DHS subsequently put out a press release calling Lander a "politician[] pulling a stunt in an attempt to get their 15 minutes of fame."[19] Lander was previously arrested in June 2025 for allegedly assaulting and impeding a federal officer, but no charges were filed.[20] DHS issued prejudicial public statements on Lander's case, as described below.

g.  **John Brennan**: On July 8, 2025, it was reported that Brennan, the former CIA Director who has been an outspoken critic of Trump, was the subject of an FBI investigation for his role in investigating Russian interference in the 2016 election.[21] President Trump

---

[16] April Rubin, *These are the people Trump told the Justice Department to prosecute*, Axios (Sep. 26, 2025) https://www.axios.com/2025/09/26/trump-justice-department-prosecute-james-comey-adam-schiff-letitia-james.

[17] Amanda Wilcox, *A breakdown of the complicated Trump-Comey relationship*, PBS https://www.pbs.org/newshour/classroom/posts/2017/06/a-breakdown-of-the-complicated-trump-comey-relationship.

[18] Luis Ferré-Sadurní, Wesley Parnell and Samantha Latson, *11 N.Y. Officials Arrested Trying to Access ICE Detention Cells*, N.Y. Times (Sep. 18, 2025),
https://www.nytimes.com/2025/09/18/nyregion/elected-officials-arrested-ice-new-york.html.

[19] Press Release, Homeland Security, Meet the Criminal Illegal Aliens Sanctuary Politicians Want Released From 26 Federal Plaza in New York City (Sep. 19, 2025),
https://www.dhs.gov/news/2025/09/19/meet-criminal-illegal-aliens-sanctuary-politicians-want-released-26-federal-plaza.

[20] Luis Ferré-Sadurní, *Brad Lander Is Arrested by ICE Agents at Immigration Courthouse*, N.Y. Times (Jun. 17, 2025), https://www.nytimes.com/2025/06/17/nyregion/brad-lander-immigration-ice.html.

[21] Glenn Thrush and Julian E. Barnes, *Administration Takes Steps to Target 2 Officials Who Investigated Trump*, N.Y. Times (Jul. 9, 2025),
https://www.nytimes.com/2025/07/09/us/politics/ratcliffe-brennan-cia.html

and the White House Press Secretary issued prejudicial public statements on Brennan's case, as described below.

h. **Sen. Adam Schiff:** On August 5, 2025, the DOJ launched a criminal investigation of Schiff, a current Democratic Senator from California, former chairman of the House Intelligence Committee, leader of the 2019 impeachment inquiry against President Trump, and former member of House Select Committee investigating the January 6, 2021, attack on the United States Capitol, for alleged mortgage fraud.[22] Schiff was named in the same communication to the Attorney General directing immediate action that included Comey and James.[23] President Trump issued prejudicial public statements on Schiff's case, as described below.

i. **Lisa Cook:** On September 4, 2025, DOJ opened a criminal investigation of Cook, a Biden-appointed Federal Reserve Governor who has resisted President Trump's attempts to fire her, for alleged mortgage fraud.[24] President Trump has made prejudicial statements about Ms. Cook's case, as described below.

j. **John Bolton:** On October 16, 2025, Bolton, a former Trump National Security Adviser and outspoken Trump critic who wrote a memoir about his tenure working in the first Trump administration, was indicted on charges that he transmitted and retained National Defense Information.[25] President Trump, the Attorney General, and the FBI Director issued prejudicial public statements about Bolton's case, as described below.

B. The administration's investigations and prosecutions of these critics and perceived opponents have been accompanied by numerous instances of irregular conduct.

The Constitution, federal statutes, internal Department of Justice guidelines, and the rules governing the legal profession work together to insulate federal criminal investigations and

---

[22] Ryan J. Reilly, Jonathan Dienst, Tom Winter, Vaughn Hillyard and Dareh Gregorian, *DOJ investigating N.Y. AG's office and Sen. Adam Schiff*, NBC News (Aug. 8, 2025) https://www.nbcnews.com/politics/justice-department/doj-opens-investigation-new-york-ags-office-brought-fraud-case-trump-rcna223731.

[23] *Id.*

[24] Eric Tucker and Paul Wiseman, *DOJ probing mortgage fraud claims against Fed governor Lisa Cook, AP source says*, PBS (Sep. 4, 2025), https://www.pbs.org/newshour/politics/doj-probing-mortgage-fraud-claims-against-fed-governor-lisa-cook-ap-source-says.

[25] Press Release, Office of Public Affairs, U.S. Dep't of Justice, Justice Department Statements Regarding Indictment of Former National Security Advisor John Bolton (Oct. 16, 2025) https://www.justice.gov/opa/pr/justice-department-statements-regarding-indictment-former-national-security-advisor-john.

prosecutions from improper politicization and ensure that prosecutors are complying with their "take care" and other constitutional duties when enforcing the law. However, the Trump administration has departed from these safeguards in connection with the investigations and prosecutions discussed here.

1. Public comments on criminal investigations

Every person accused of a crime is entitled to a presumption of innocence, *Coffin v. United States*, 156 U.S. 432, 453 (1895), and "to a fair trial, free from publicity that prejudices jurors against the defendant at its outset." *Wells v. Murray*, 831 F.2d 468, 471–72 (4th Cir. 1987); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors").

These constitutional commands are reinforced by the media policy contained in the DOJ's Justice Manual.[26] Although it creates no enforceable rights on its own terms, the policy prohibits prosecutors from making public statements that could prejudice defendants' rights and otherwise jeopardize the integrity of criminal investigations and prosecutions. Prohibited public comments include "observations about a defendant's or party's character," references to confessions or admissions by the defendant, statements concerning anticipated evidence in a case, and "any opinion as to the defendant's guilt." Justice Manual, 1-7.610 ("Concerns of Prejudice").

This policy dovetails with ethical obligations that apply to the attorneys who oversee the Justice Department and carry out its law enforcement mission. 28 U.S.C. § 530B (requiring Justice Department attorneys to comply with state bar rules). Under the Model Rules of the

---

[26] *See* Justice Manual, 1-7000 et seq., Confidentiality and Media Contacts Policy, https://www.justice.gov/jm/jm-1-7000-media-relations.

American Bar Association, for example, prosecutors have a duty to "refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making." ABA Model Rule 3.8 ("Special Responsibilities of a Prosecutor").

Of course, the president is the head of the executive branch and not himself a DOJ employee. And the current president is not a licensed attorney. But given the bully pulpit that comes with the office, a president's words can easily impact the integrity of a criminal proceeding and set the tone for people he appoints to lead the Department. For this reason, in the post-Watergate era, presidents have largely observed a norm of refraining from comment on DOJ's enforcement actions against specific individuals and entities. More broadly, presidents have treated DOJ's specific-party enforcement actions as independent from the White House and declined to interfere with its prosecutorial decisions.[27] The current administration has openly disregarded these norms and the president has repeatedly inserted himself — and his words — into DOJ's law enforcement activities.

The following is a non-exhaustive list of extrajudicial statements by President Trump or DOJ's political leadership that run afoul of DOJ's media policy and respect for the constitutional presumption of innocence made in relation to the cases listed above. It includes statements – from official government "orders" and correspondence, press conferences, informal comments, and social media posts – in which President Trump has demanded or specifically directed criminal investigations, and in which he or other DOJ officials have presumed the guilt or

---

[27] *See, e.g.*, Daphna Renan, Presidential Norms and Article II, 131 Harv. L. Rev. 2187, 2207-2215 (June 2018).

impugned the character of individuals who have not yet been charged with or convicted of a
crime.

a. **Abrego Garcia**: Despite evidence to the contrary, the Department of Homeland
   Security put out official press releases stating that "THE REAL STORY [is] Kilmar
   Abrego Garcia is an MS-13 Gang member with a History of Violence"[28] and calling
   out "Sanctuary Politicians for Standing with Kilmar Abrego Garcia, an MS-13 Gang
   Member, Human Trafficker, Wife Beater, and Child Predator."[29] President Trump
   also publicly accused the "Radical Lunatic Democrats" of "falsely making Kilmar
   Armando Abrego Garcia out to be a very sweet and innocent person, which is a total,
   blatant, and dangerous LIE."[30]

b. **Dugan**: Attorney General Pam Bondi and FBI Director Kash Patel both issued public
   statements suggesting that Judge Dugan's arrest serves as a threat towards anyone
   protecting immigrants that "[the U.S. DOJ] will come after you and we will prosecute
   you," and that Judge Dugan was "deranged."[31]

c. **McIver**: President Trump publicly commented on the evidence, describing the
   Congresswoman's conduct as "shoving," "out of control," and the "kind of crap" that
   is "over in this country."[32] DHS put out several statements about Rep. McIver's
   arrest, including, but not limited to, one accusing her of being a "gutter politician";
   one posting an edited video of the incident stating that she "stormed the gate" and
   was ASSAULTING an ICE agent"; and another that she was "encouraging and
   leading [] supporters in assaulting law enforcement."[33] Rep. McIver's legal team

---

[28] Press Release, Homeland Security, THE REAL STORY: Kilmar Abrego Garcia is an MS-13
Gang member with a History of Violence, (April 16, 2025)
https://www.dhs.gov/news/2025/04/16/kilmar-abrego-garcia-ms-13-gang-member-history-
violence .
[29] Press Release, Homeland Security, DHS Calls Out Sanctuary Politicians for Standing with
Kilmar Abrego Garcia, an MS-13 Gang Member, Human Trafficker, Wife Beater, and Child
Predator Over the Safety of the American People, (August 25, 2025)
https://www.dhs.gov/news/2025/08/25/dhs-calls-out-sanctuary-politicians-standing-kilmar-
abrego-garcia-ms-13-gang-member.
[30] Donald Trump (@realDonaldTrump), Truth Social (Apr. 20, 2025, at 05:12pm ET)
https://truthsocial.com/@realDonaldTrump/posts/114372349322321344.
[31] Jason Lalljee, *"Deranged" Milwaukee judge's arrest a warning to others, Bondi says*, Axios
(Apr. 25, 2025), https://www.axios.com/2025/04/25/hannah-dugan-trump-bondi-fbi-arrest.
[32] Luke Barr, *Charges against Rep. LaMonica McIver spark backlash after incident with ICE
agents*, ABC News (May 20, 2025), https://abcnews.go.com/Politics/rep-lamonica-mciver-
charged-doj-incident-ice-agents/story?id=121971746.
[33] ECF 21-1, *United States v. McIver*, 2:25-cr-00388, (D.N.J.)

argued that these statements were inappropriate extrajudicial statements. DHS removed many of the posts in question in response to statements and orders from the Judge.

d. **Comey**: Trump made statements about Comey (and John Brennan) being "dishonest people." [34] President Trump posted on Truth Social seemingly demanding that Pam Bondi prosecute Comey and saying Comey was "guilty as hell."[35] Just after Comey's indictment was announced, President Trump took to Truth Social to state that Comey is "one of the worst human beings the Country has ever been exposed to"[36] calling him "James 'Dirty Cop' Comey" while loudly alleging that "HE LIED!"[37] During an interview with 60 Minutes, President Trump once again called Comey a "dirty cop," and when asked about his Truth Social post seemingly calling for Bondi to prosecute, he said he did not "have to instruct [Pam Bondi and Kash Patel], because [Comey and Letitia James] were so dirty, they were so crooked, they were so corrupt" that prosecutors did it on their own.[38]

e. **Lander**: the Department of Homeland Security ("DHS") put out a press release calling Mr. Lander a "politician[] pulling a stunt in attempt to get their 15 minutes of fame" while detailing "facts" of the situation.[39] DHS posted several statements about Lander's arrest stating "no one is above the law, and if you lay a hand on a law enforcement officer, you will face consequences"[40] despite the fact Mr. Lander received no charges. That didn't stop DHS from posting a month later stating that "NYC Comptroller Brad Lander assaulted our brave law enforcement."[41]

---

[34] Glenn Thrush and Julian E. Barnes, *Administration Takes Steps to Target 2 Officials Who Investigated Trump*, N.Y. Times (July 9, 2025) https://www.nytimes.com/2025/07/09/us/politics/ratcliffe-brennan-cia.html.
[35] Donald Trump (@realDonaldTrump), Truth Social (Sep. 20, 2025 at 6:44pm ET) https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.
[36] Donald Trump (@realDonaldTrump), Truth Social (Sep. 25, 2025 at 7:24pm ET) https://truthsocial.com/@realDonaldTrump/posts/115267513846352215.
[37] Donald Trump (@realDonaldTrump), Truth Social (Sep. 26, 2025 at 6:57am ET) https://truthsocial.com/@realDonaldTrump/posts/115270236987768479.
[38] Video posted by 60 Minutes, YouTube, Are recent indictments Trump's political retribution? 3shorts (Nov. 3, 2025) https://www.youtube.com/shorts/Zu39k2LoZ58
[39] Press Release, Homeland Security, Meet the Criminal Illegal Aliens Sanctuary Politicians Want Released From 26 Federal Plaza in New York City, (Sep. 19, 2025) https://www.dhs.gov/news/2025/09/19/meet-criminal-illegal-aliens-sanctuary-politicians-want-released-26-federal-plaza.
[40] Homeland Security (@DHSgov), X (June 17, 2025 at 02:24pm ET) https://x.com/DHSgov/status/1935040871717916825.
[41] Homeland Security (@DHSgov), X (July 9, 2025, at 03:36pm ET) https://x.com/DHSgov/status/1943031598129049844.

f. **Brennan**: White House Press Secretary Karoline Leavitt made statements about being glad to see the investigation into "corruption at the highest level" and into "the deep state" attacks on Trump, with no evidence to support these statements.[42] Trump made statements about Brennan being "crooked as hell" and a "dishonest [person]."[43]

g. **Schiff**: On May 5, 2025, President Trump posted on Truth Social suggesting his administration "should start playing this game" and "expel Democrats for the many crimes that they have committed" before launching into allegations that Schiff was involved in illegal activity related to the January 6th committee.[44] And before the fraud investigation into Adam Schiff even began, President Trump posted on Truth Social claiming he "always suspected Shifty Adam Schiff was a scam artist,"[45] and alleging fraud calling Schiff a "THIEF!"[46] and stating that he "is in BIG TROUBLE! He falsified Loan Documents."[47] Trump continued to post about "irrefutable proof"[48] that Schiff was leaking classified information to damage Trump and that "'Schiffty' Schiff was sooo dishonest and corrupt."[49]

h. **Cook**: President Trump posted a letter to Ms. Cook on social media informing her of his intention to fire her and accusing her of criminal conduct. President Trump wrote that there was "reason to believe" Cook had committed mortgage fraud, and went on to opine about the evidence, saying "it is inconceivable that" Cook was "not aware" of conflicting statements on official documents and calling the conduct "deceitful." President Trump went on to say, "I do not have confidence in your integrity. At a

[42] Glenn Thrush and Julian E. Barnes, *Administration Takes Steps to Target 2 Officials Who Investigated Trump*, N.Y. Times (July 9, 2025) https://www.nytimes.com/2025/07/09/us/politics/ratcliffe-brennan-cia.html.

[43] Josh Meyer, *House Republicans refer Obama CIA Director John Brennan for criminal prosecution*, USA Today (Oct. 21, 2025), https://www.usatoday.com/story/news/politics/2025/10/21/house-gop-refers-john-brennan-to-doj/86820883007/.

[44] Donald Trump (@realDonaldTrump), Truth Social (May 1, 2025, at 11:36pm ET) https://truthsocial.com/@realDonaldTrump/posts/114436142904738936.

[45] Donald Trump (@realDonaldTrump), Truth Social (July 15, 2025) https://truthsocial.com/@realDonaldTrump/posts/114857687712359546.

[46] Donald Trump (@realDonaldTrump), Truth Social (July 20, 2025, at 10:20am ET) https://truthsocial.com/@realDonaldTrump/posts/114886877289379131.

[47] Donald Trump (@realDonaldTrump), Truth Social (July 20, 2025, at 08:53pm ET) https://truthsocial.com/@realDonaldTrump/posts/114888488677783141.

[48] Donald Trump (@realDonaldTrump), Truth Social (Aug. 13, 2025, at 06:17am ET) https://truthsocial.com/@realDonaldTrump/posts/115020938176485683.

[49] Donald Trump (@realDonaldTrump), Truth Social (Oct. 12, 2025, at 11:04am ET) https://truthsocial.com/@realDonaldTrump/posts/115361806192142146.

minimum, the conduct at issue exhibits the sort of gross negligence in financial transactions that calls into question your competence and trustworthiness."[50]

i. **Bolton**: When asked about the FBI search of John Bolton's home, President Trump called John Bolton a "low life" and a "sleaze bag."[51] Before becoming FBI Director, Kash Patel named Bolton on his "enemies list."[52] Just moments after the raid on Bolton's house was announced, Kash Patel tweeted from his official account that "NO ONE is above the law."[53] Attorney General Pam Bondi retweeted, saying "AMERICA'S SAFETY ISN'T NEGOTIABLE. JUSTICE WILL BE PURSUED."[54] Vice President Vance also made public comments about the investigation while acknowledging they were just looking into Bolton and that at the time, there was no plan to prosecute.[55]

*Amicus* is aware of no precedent for the president and other high-ranking DOJ and law enforcement officials speaking in this manner about criminal investigations and their subjects not just once, but as a matter of course. The statements are revealing of the administration's animus toward the subjects and its motive to use prosecutions as a form of retaliation and control. At the same time, they are a sign that the president and his subordinates lack concern for ensuring that even possibly legitimate investigations are free from procedural defects, which could thwart the administration's ability to obtain convictions. And they certainly should not give the court any

---

[50] Read Trump's Directive Firing Lisa Cook, N.Y. Times (Aug. 25, 2025) https://www.nytimes.com/interactive/2025/08/25/us/trump-lisa-cook-fed-firing.html.
[51] Video posted by CBS News, Trump reacts to FBI raiding John Bolton's home, office, YouTube (Aug. 22, 2025) https://www.youtube.com/watch?v=ZkGf1gQ_ZXE.
[52] David Corn, *Here Are the Republicans Kash Patel Wants to Target*, MotherJones (Dec. 3, 2024) https://www.motherjones.com/politics/2024/12/here-are-the-republicans-kash-patel-wants-to-target/.
[53] Kash Patel (@FBIDirectorKash), X (Aug. 22, 2025, at 07:03am ET) https://x.com/FBIDirectorKash/status/1958847495028584529?lang=en.
[54] Pam Bondi (AGPamBondi), X (Aug. 22, 2025, at 07:45am ET) https://x.com/AGPamBondi/status/1958858061214371962.
[55] Aaron Rupar (@atrupar.com), Bluesky (Aug.22, 2025 at 12:58pm ET) https://bsky.app/profile/did:plc:4llrhdclvdlmmynkwsmg5tdc/post/3lwywiw5tf42q?ref_src=embed&ref_url=https%253A%252F%252Fiframe.nbcnews.com%252Fa5A98tUM.

comfort that prosecutors acting at the president's direction are "properly discharg[ing] their official duties." *United States Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926).

### 2. Unlawful appointments of United States Attorneys

Another safeguard maintaining law enforcement independence from improper politicization is the requirement that United States Attorneys, along with other "officers of the United States," be appointed subject to "the advice and consent of the Senate." U.S. Const., Article II, § 2, cl. 1. In the absence of a Senate-confirmed United States Attorney, federal statutes provide for the appointment of "acting" and "interim" United States Attorneys. In the case of interim United States Attorneys, once their 120-day term expires, the statute provides for the district court of the jurisdiction to appoint a replacement "to serve until the vacancy is filled." 28 U.S.C. § 546(d). So both constitutional and statutory law place limits on the president's ability to appoint United States Attorneys without sign-off from one of the other branches of government. However, President Trump has repeatedly sought to circumvent both the Senate and the courts to appoint individuals to United States Attorney positions who appear to privilege loyalty to the president's directives over their "take care" duties.[56]

Ms. James is presently challenging the appointment of the current United States Attorney for the Eastern District of Virginia ("EDVA"), Lindsey Halligan, and *Amicus* will not address the lawfulness of that appointment here. But Ms. Halligan's appointment is not the only U.S. Attorney role that appears legally questionable. Three district courts have ruled that the president unlawfully sought to extend the appointment of an interim United States attorney beyond 120

---

[56] *See* Erica Orden and Haley Fuchs, *Donald Trump's U.S. Attorneys, Unvetted by the Senate, Move Full Steam Ahead*, Politico (Sep. 26, 2025)
https://www.politico.com/news/2025/09/26/donald-trump-us-attorneys-senate-confirmation-00583005.

days. In the District of New Jersey, the trial court disqualified Alina Habba, holding that she had "exercised the functions and duties of the office of the United States Attorney for the District of New Jersey without lawful authority." *United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2416737, at *1 (D.N.J. Aug. 21, 2025) (appeal pending). The District of Utah and the Central District of California followed suit in disqualifying Sigal Chattah and Bilal Essayli from their purported Acting United States Attorney roles. *United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640, at *11 (D. Nev. Sept. 30, 2025) (appeal pending); *United States v. Ramirez*, et al., No. 5:25-cr-264-SSS, 2025 WL 3019248, at *6 (C.D Cal. Oct. 28, 2025).

These appointments have implications for the legality of actions taken by the allegedly invalidly-serving United States Attorneys. But the administration's efforts to appoint United States Attorneys personally loyal to President Trump while circumventing Senate and court approval also matter even outside those districts. They are another signal of Trump's intention to transform the federal government's law enforcement power from a tool to be used in the public interest into a weapon to punish and quell political opposition. These actions should thus caution courts to closely scrutinize the prosecutorial decisions of United States Attorneys appointed under these circumstances. That is especially so when those United States Attorneys are overseeing the prosecutions of Trump's perceived opponents, as outlined in this brief.

### 3. Disregard of and punishment for dissenting judgments by DOJ personnel

Another reason courts have long deferred to the Justice Department in its exercise of prosecutorial decisionmaking is respect for the institutional competence of federal prosecutors to apply the law and the Department's criteria for determining the propriety of federal charges. *See Wayte v. United States*, 470 U.S. 598, 607 (1985). Courts have likewise been able to rely on the

fact that prosecutors must personally maintain law licenses that they hold subject to certain

ethical duties in assessing whether the representations they advance can be taken at face value.[57]

The government is of course required by law to present evidence that meets the "probable

cause" standard when seeking an indictment. *See Branzburg v. Hayes*, 408 U.S. 665, 686

(1972). The Justice Department's Principles of Federal Prosecution go further and require

prosecutors both to believe that the evidence supporting an indictment would probably be

sufficient to sustain a guilty verdict on appeal under the "reasonable doubt" standard and to

apply a set of criteria for determining the existence of a "substantial federal interest" in charging

a case.[58] Those criteria also contain a set of *impermissible* considerations for prosecution,

including the subject's political associations, activities, or beliefs, his exercise of his

constitutional rights, and prosecutorial animus toward the subject.[59] Likewise, prosecutors are

ethically bound to make truthful representations to courts and to "refrain from prosecuting a

charge that the prosecutor knows is not supported by probable cause." ABA Model Rule 3.8.

Yet under this administration, political appointees have routinely disregarded

professional advice from prosecutors or punished them for adhering to the law, the Justice

Manual, and their ethical duties. Ms. James describes DOJ leadership's disregard for the

judgment of career prosecutors who offered their professional judgment that the case against her

was not supported by sufficient evidence, including the forced resignation of the United States

Attorney for this district and the firing of career prosecutors for their recommendation to decline

---

[57] See Alan Z. Rozenshtein, *What Happens When Courts Can't Trust the Executive Branch?*
Lawfare (Apr. 10, 2025) ("Unlike inquisitorial systems, in which judges actively engage in fact-finding, our system relies heavily on opposing counsel to present their cases vigorously and truthfully. This presupposes a baseline of good faith and candor from all lawyers, particularly those representing the government."), https://www.lawfaremedia.org/article/what-happens-when-courts-can-t-trust-the-executive-branch.
[58] Justice Manual, Principles of Federal Prosecution, 9-27.220.
[59] *Id.* at 9-27.260.

the case. Many examples from other cases abound and include credible allegations that DOJ

leadership has directed attorneys to mislead courts, a few of which are described below.

a) *Resignation of the career Criminal Chief in advance of the indictment of Kilmar Abrego Garcia and the firing of career officials who made truthful representations to courts in connection with his removal to El Salvador*

The Abrego Garcia case has been marked throughout by the administration's disregard

for the judgment and ethical obligations of DOJ career attorneys. DOJ Attorney Erez Reuveni,

the Acting Deputy Director of the Office of Immigration Litigation, was suspended and then

fired for truthfully informing a District Court judge that Abrego Garcia had been removed from

the United States to El Salvador in error.[60] He later told the Senate Judiciary Committee that

administration political appointees had instructed him and his colleagues to defy court orders and

to falsely inform the court that Abrego Garcia was a terrorist.[61] In connection with the after-the-

fact criminal indictment of Abrego Garcia, the career Criminal Chief for the Middle District of

Tennessee resigned after apparently expressing the concern that the indictment was politically

motivated.[62]

b) *Firing of prosecutors who advised against indicting former FBI Director James Comey*

In addition to counseling against the James indictment, former EDVA United States

Attorney Erik Siebert informed DOJ political officials that false statements and obstruction of

---

[60] *See* Glenn Thrush, *Justice Dept. Accuses Top Immigration Lawyer of Failing to Follow Orders*, N.Y. Times (Apr. 5, 2025), https://www.nytimes.com/2025/04/05/us/politics/justice-dept-immigration-lawyer-leave.html.

[61] See Devlin Barrett, Justice Dept. Leader Suggested Violating Court Orders, Whistleblower Says, N.Y. Times (June 24, 2025), https://whistleblower.org/in-the-news/the-new-york-times-justice-dept-leader-suggested-violating-court-orders-whistleblower-says/.

[62] *See* Katherine Faulders, James Hill & Alexander Mallin, Kilmar Abrego Garcia brought back to U.S., appears in court on charges of smuggling migrants, ABC News (June 6, 2025), https://abcnews.go.com/US/mistakenly-deported-kilmar-abrego-garcia-back-us-face/story?id=121333122.

justice charges against former FBI Director James Comey were not supported by sufficient evidence.[63] As noted above and described by Ms. James, Siebert was forced to resign. Career prosecutors who investigated the Comey matter reported not finding evidence helpful to sustaining charges and none of them ultimately signed the indictment.[64]

    c) *Firing of the United States Attorney for the Western District of Virginia for resisting indictments of FBI officials*

President Trump's animus toward Mr. Comey for his role in investigating Russian interference in the 2016 election extends to numerous other officials at the Federal Bureau of Investigation. According to recent reporting, DOJ officials pressured the United States Attorney for the Western District of Virginia to investigate and indict some of those officials. When the United States Attorney refused to remove a prosecutor who found insufficient evidence to pursue those investigations, the United States Attorney resigned after being informed that he would be fired.[65]

    4.  Rebukes by judges

The ever-expanding list of irregular conduct by DOJ officials has not gone unnoticed by the courts. Judges overseeing several of the criminal prosecutions catalogued in this brief have found evidence of vindictiveness or otherwise expressed skepticism about the sufficiency of the

---

[63] *See* Glenn Thrush, Maggie Haberman, Jonah E. Brownwich, Alan Feuer and William K. Rashburn, *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from President*, N.Y. Times (Sep. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.
[64] See Glenn Thrush, Maggie Haberman, Alan Feuer & Tyler Pager, I*nside the Trump Administration's Plan to Prosecute James Comey*, N.Y. Times (Sept. 27, 2025), https://www.nytimes.com/2025/09/27/us/politics/trump-comey-justice-department.html
[65] *See* Devlin Barrett and Michael S. Schmidt, *U.S. Attorney Was Forced Out After Clashes Over How to Handle Russia Inquiry*, N.Y. Times (Oct. 14, 2025) https://www.nytimes.com/2025/10/14/us/politics/doj-trump-russia-inquiry-prosecutors.html.

evidence for the government's charges, and there have been numerous other instances of judges declining to give deference to the government's actions and representations.

    *a) Abrego Garcia*

Judges in the Middle District of Tennessee have displayed deep skepticism of the evidentiary basis for the criminal case against Kilmar Abrego Garcia and of the government's motive for charging it. Denying a government motion to detain Abrego Garcia following his indictment, Magistrate Judge Barbara D. Holmes rejected the government's claims that Mr. Abrego Garcia was a flight risk or a danger to the community on grounds that he was an MS-13 gang member and had committed crimes – including inappropriate sexual conduct – involving minors. On the latter claim, Judge Holmes found that the government's evidence was based on many layers of hearsay from unreliable witnesses and that it was entitled to "little weight." *United States v. Abrego*, 787 F. Supp. 3d 830, 849–52 (M.D. Tenn. 2025). As to the allegations of gang membership, "The government alleges that Abrego is a longtime and well-known member of MS-13," Judge Holmes wrote. "But Abrego has no reported criminal history of any kind. And his reputed gang membership is refuted by the government's own evidence." *Id.* at 865.

On October 3, 2025, District Judge Waverly D. Crenshaw, entered an order granting Abrego Garcia discovery on the ground that he had shown a "realistic likelihood of vindictiveness" motivating his indictment. *United States v. Abrego*, No. 3:25-CR-00115, 2025 WL 2814712, at *4 (M.D. Tenn. Oct. 3, 2025). In doing so, the court noted multiple extra-judicial statements by DOJ and other government officials pronouncing him a "gang member," a "violent criminal," a "serial domestic abuser," "human trafficker," and a "terrorist," and otherwise presuming his guilt. *Id.* at *3-4. The court took particular note of a Fox News

interview in which Deputy Attorney General Todd Blanche acknowledged that DOJ had commenced a criminal investigation of Abrego Garcia after "'a judge in Maryland ... questioned' the government's decision [to send Abrego Garcia to El Salvador], found that it 'had no right to deport him,' and 'accus[ed] [the government] of doing something wrong.'" *Id.* at *4. The court then concluded that "the timing of Abrego's indictment suggests a realistic likelihood that senior DOJ and DHS officials may have induced Acting U.S. Attorney McGuire (albeit unknowingly) to criminally charge Abrego in retaliation for his Maryland lawsuit." *Id.* at *7.

On October 27, the district court found Trump administration officials in violation of a local rule prohibiting parties from making extrajudicial statements that "have a substantial likelihood of materially prejudicing" a defendant's right to a fair trial. The court called the administration's statements "troubling, especially where many of them are exaggerated if not simply inaccurate" and warned that "any future statements that pose a clear and present danger to Abrego's fair trial right may subject the speaker to sanctions." While the court found that Abrego's right to a fair trial had not *yet* been prejudiced, it noted that time could not necessarily cure the damage from "damaging and highly inflammatory statements" and thus held future compliance with the rule on extrajudicial statements to be "critically important."[66]

*b)  Mayor Ras Baraka*

The case against Newark Mayor Ras Baraka did not get out of the starting gate. The United States Attorney's Office for the District of New Jersey moved to drop federal trespassing charges against Baraka ten days after his arrest. U.S. Magistrate Judge Andre Espinosa called the charges "a worrying misstep" that was suggestive of "a failure to adequately investigate, to

---

[66] *United States v. Abrego*, No. 3-25-cr-00115 (M.D. Tenn. Oct. 27, 2025), ECF 182 at 7-8 (quoting *United States v. Koubriti*, 305 F.Supp. 2d 723, 745 (E.D. Mich. 2003)).

carefully gather facts, and to thoughtfully consider the implications" of charging the Mayor. He then admonished the U.S. Attorney's Office to let the incident "serve as an inflection point and a reminder to uphold your solemn oath to the people of this district and to your client, justice itself" and to "sure that every charge brought is a product of rigorous investigation."[67]

c) *Congresswoman LaMonica McIver*

Congresswoman LaMonica McIver was charged with assaulting a federal officer arising out of the same incident in which Mayor Baraka was arrested. On October 21, the District Court for New Jersey held a hearing on her motion to dismiss on grounds of selective and vindictive prosecution and legislative immunity. While the court did not resolve the motion, Judge Jamel Semper ordered the government to take down social media posts he said were "fact free" and "prejudicial" to the Congresswoman.[68]

d) *Other cases in which judges have declined to apply the presumption of regularity*

Criticism of government conduct by judges in the criminal cases discussed in this brief relates to a larger pattern of irregular DOJ conduct that has drawn the attention of judges nationwide. According to a study produced by *Just Security*, since the beginning of President Trump's current term, courts have expressed concern over compliance with judicial orders in 20 cases, expressed distrust in information presented and representations made by government attorneys in over 40 cases, and found arbitrary and capricious action by the government in 58

---

[67] Sophie Neito-Munoz, *Judge admonishes prosecutors over handling of Newark mayor's arrest*, New Jersey Monitor (May 21, 2025), https://newjerseymonitor.com/2025/05/21/judge-admonishes-prosecutors-over-handling-of-newark-mayors-arrest/.
[68] Mike Catalini, *Judge says DHS social media posts in Rep. McIver prosecution are 'prejudicial' and should be removed*, Associated Press (Oct. 21, 2025), https://abcnews.go.com/Politics/wireStory/judge-dhs-social-media-posts-rep-mciver-prosecution-126735551.

cases.[69] In particular, courts have rendered numerous judgments in which they have found the

government to act with retaliatory and pretextual motives, including against universities, federal

workers, law firms, and media companies.[70] This pattern of conduct has led many judges to

conclude that the government has forfeited the entitlement to deference in the execution of its

core functions.[71] As Judge Paula Xinis put it in Mr. Abrego Garcia's removal case, "You have

taken the presumption of regularity and you have destroyed it in my view."[72]

II.  The Trump administration's pattern of retaliatory and irregular conduct supports Ms.
     James' claim that the charges against her are vindictive and counsels against judicial
     deference.

The evidence presented by Ms. James that the prosecution against her amounts to

vindictive and selective retaliation is overwhelming and stands on its own. Taken together with

the administration's larger pattern of prosecuting Trump's critics and perceived political

opponents, there is no reason for the court to give deference to its prosecutive decisions.

    A.  The administration's pattern of retaliatory prosecutions supports Ms. James'
        motion.

To establish a vindictive prosecution, a defendant must provide "objective evidence that

'(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would

---

[69] Ryan Goodman, Siven Watt, Audrey Balliette, Maggie Lin, Michael Pusic and Jeremy
Venook, *The "Presumption of Regularity" in Trump Administration Litigation*, Just Security
(Oct. 15, 2025), https://www.justsecurity.org/120547/presumption-regularity-trump-
administration-litigation/#post-122613-_Toc211417822.

[70] *Id.*

[71] *Id.*

[72] *See* Alan Feuer and Minho Kim, *Judge Signals She Will Protect Abrego Garcia from Hasty
Second Deportation*, N.Y. Times (Jul. 11, 2025)
https://www.nytimes.com/2025/07/11/us/politics/abrego-garcia-deportation-judge-protection-
trump.html.

not have been prosecuted but for that animus'" *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). That standard is easily satisfied here.

Ms. James' brief recounts the numerous occasions on which she publicly criticized President Trump during her campaign for attorney general – *i.e.*, engaged in core political speech protected by the First Amendment – and the official actions she took against him, along with the manner and timeline of President Trump's response. Time and again, President Trump publicly denounced Ms. James, impugned her character, communicated to executive branch officials that she should be prosecuted, and opined on her guilt. That is exactly what the president and his appointees have done in the other prosecutions discussed in this brief. President Trump has overtly expressed his motive in Ms. James' case; the larger pattern of conduct should give the court great confidence in taking President Trump's actions – and those of the subordinates he directed – at face value. *Cf.* Federal Rule of Evidence 404(b) (other wrongful acts admissible to prove intent and motive).

The causal link between President Trump's personal animus toward Ms. James and the prosecution commenced and furthered against her by the president's subordinates likewise exists in the DOJ prosecutions outlined here. In James' case, multiple DOJ prosecutors concluded that the evidence against her – or lack thereof – was not legally sufficient for an indictment and recommended against pursuing one in accordance with the Principles of Federal Prosecution. President Trump then specifically directed the Attorney General to ensure James' prosecution, forced the removal of the then-sitting United States Attorney, and had him replaced with a personal loyalist. The loyalist then obtained the indictment as instructed. The same course of events played out in connection with the indictment of Mr. Comey by the same United States Attorney. *See supra* at 18–19. It appears to be underway in the Western District of Virginia

24

with respect to investigations of FBI officials, and in the District of Maryland with respect to Senator Adam Schiff.[73]

Against this backdrop, there is no reason for the court to privilege deference to the executive over Ms. James' straightforward presentation of events. She has more than met her burden to provide the "clear evidence" necessary to demonstrate that the government has abused its prosecutorial discretion and that the indictment charging her should be dismissed.

      B. The administration should not get the benefit of "presumption of regularity" deference.

In any event, the administration is not entitled to "presumption of regularity" deference in this case or any other that targets a subject whose guilt has been publicly asserted by President Trump and his appointees or whose prosecution he has specifically demanded. The latitude afforded the government in the exercise of its prosecutorial discretion rests on the assumption that government actors are "properly discharg[ing] their official duties" in furtherance of "tak[ing] Care that the Laws be faithfully executed." *Chemical Foundation, Inc.,* 272 U.S. at 14–15; U.S. Const., Art. II, § 3; see 28 U.S.C. §§ 516, 547. The government's actions should thus get the benefit of deference only in "the ordinary case[s]," where they are doing so. But there is nothing "ordinary" about Ms. James' prosecution or the others discussed here. *Armstrong,* 517 U.S. at 464. Indeed, the Trump administration's approach to law enforcement has upended the system that was held to justify broad deference in the first place.

In sum, the courts have deferred to the government's exercise of prosecutorial discretion based on an assumption that prosecutors are making assessments, such as "'the strength of the

---

[73] *See* Ryan J. Reilly, Kristen Welker, Michael Kosner and Carol E. Lee, *The Adam Schiff Criminal Indictment Has Stalled, Sources Say*, NBC News (Oct. 23, 2025), https://www.nbcnews.com/politics/justice-department/adam-schiff-criminal-probe-stalled-sources-say-rcna239375

case, the prosecution's general deterrence value, the government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan,'" *Id.* at 465 (quoting *Wayte*, 470 U.S. at 607 (1985)), that they are uniquely "competent to undertake" within the limits of their larger duty to uphold the constitution and laws. *Id.* Yet in Ms. James' case and those recounted in this brief, the government has done precisely the opposite.

The government has disregarded its own rules against publicly impugning the subjects of its investigations and compromised their constitutional rights to the presumption of innocence and fair trials. *See supra* 4–22. Its officials have publicly displayed open animus toward the subjects of investigations. And the Justice Department has not merely failed to adhere to its own Principles of Federal Prosecution – which are rooted in the requirement that criminal prosecutions be supported by evidence of guilt that at the very least meets the probable cause standard – but has gone much further and effectively precluded the government's prosecutors from exercising their professional judgment to decline to seek charges in cases that do not pass legal muster.

For all these reasons, courts should subject the indictment of Ms. James and all similarly situated others to exacting scrutiny in order to preserve the evenhanded law enforcement our democracy requires.

## CONCLUSION

Since President Trump commenced his second term in office, his administration has engaged in a pattern of retaliatory and vindictive prosecutions marked by irregular conduct and aimed at punishing President Trump's perceived political enemies and quashing dissent. Accordingly, the Court should decline to defer to the government's prosecutorial decision making and grant Ms. James' motion to dismiss the indictment.

Respectfully Submitted,

Dated: November 12, 2025        /s/ Victor M. Glasberg

Kristy Parker*                       Victor M. Glasberg (Va. Bar No. 16184)
Protect Democracy Project       Abigail S. Grand (Va. Bar No. 100578)
2020 Pennsylvania Ave. NW, Suite #163    Victor M. Glasberg & Associates
Washington, D.C. 20006            121 S. Columbus Street
Tel: (202) 579-4582               Alexandria, VA 22314
Fax: (202) 769-3176              Tel: (703) 684-1100
kristy.parker@protectdemocracy.org     Fax: (703) 684-1104
                                   vmg@robinhoodesq.com
Rachel Goodman*                 AGrand@robinhoodesq.com
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582               *Counsel for Amicus Curiae Protect*
Fax: (202) 769-3176              *Democracy Project*
rachel.goodman@protectdemocracy.org

*Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

I, Victor Glasberg, hereby certify that on November 12, 2025, I filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Virginia via delivery service which will cause a true and correct copy of this brief to be served via electronic service on all counsel of record.

Dated: November 12, 2025                /s/ Victor M. Glasberg
                                   Victor M. Glasberg