# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

### *Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 2:25-cr-122-JKW-DEM |
| | * | |
| LETITIA A. JAMES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| *    *    *    *    *    *    * | | |

## ATTORNEY GENERAL LETITIA A. JAMES' MOTION FOR DISCLOSURE OF CERTAIN GRAND JURY RECORDS AND LEGAL INSTRUCTIONS

Attorney General Letitia A. James, by and through undersigned counsel, moves this Court for an Order requiring the government provide defense counsel any certain grand jury information to determine, among other things, whether grand jurors were screened for bias and whether proper legal instructions were afforded across the two grand juries used in this case in Alexandria and Norfolk.  This motion seeks four narrow categories of material: (i) access to empanelment records of the grand jurors; (ii) any *voir dire* questions presented or other screening done to the grand jury venire and the individual grand jurors who heard evidence in this matter to screen for potential political or other bias; (iii) the prosecution's introductory remarks and legal instructions provided to the grand jury which voted on the indictment; and (iv) whether transcripts of witness testimony and other evidence procured by the Norfolk grand jury—including any that contain exculpatory material—were presented to the Alexandria grand jury.  For the foregoing reasons, the Court should order the government to produce, or provide AG James with access to, the requested grand jury materials.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 4

I.   Role Of The Grand Jury ...................................................................................... 4

A.   The Grand Jury Exists To Protect The Accused............................................ 4

B.   The Grand Jury Must Be Unbiased................................................................ 6

C.   The Grand Jury Must Receive Proper Legal Instructions.............................. 6

II.  Disclosure of Empanelment Records, Legal Instructions, And Whether The Alexandria Grand Jury Was Given Access To All Prior Testimony And Evidence From The Norfolk Grand Jury Investigation................................................................................ 8

A.   Nothing Prevents Disclosure of the Grand Jury Instructions and Empanelment Records Requested. .................................................................................................... 8

B.   In Any Event, Disclosure Would Be Justified Under Rule 6. ...................... 10

1.   Disclosure of Certain Juror Empanelment Records—Specifically, the Grand Jury List—Is Needed to Avoid Possible Injustice. ............................................11

2.   Disclosure of Questioning Conducted to Screen the Venire and Individual Grand Jurors In This Matter For Any Political Bias Is Needed to Avoid Possible Injustice.12

3.   Disclosure of How Grand Jurors Were Instructed on the Law Is Also Needed to Avoid Possible Injustice. .................................................................................... 14

4.   Disclosure of Whether Transcripts of Witness Testimony and Other Evidence Taken By the Norfolk Grand Jury Was Presented to the Alexandria Grand Jury Is Also Needed to Avoid Possible Injustice. ................................................................. 15

5.   The Need for Disclosure Is Greater Than the Need for Continued Secrecy. ............ 17

6.   The Request is Limited in Scope............................................................................. 19

CONCLUSION................................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Cases**

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988)................................................................. 7

*Costello v. United States*,
    350 U.S. 359 (1956)................................................................. 6

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
    441 U.S. 211 (1979)................................................................. 10

*Gaither v. United States*,
    413 F.2d 1061 (D.C. Cir. 1969)............................................... 5

*In re Cudahy*,
    294 F.3d 947 (7th Cir. 2002)................................................... 9

*In re Grand Jury Proceedings*,
    503 F. Supp. 2d 800 (E.D. Va. 2007). .................................... 9

*In re Grand Jury Subpoena*,
    920 F.2d 235 (4th Cir. 1990)................................................... 8

*Lawn v. United States*,
    355 U.S. 339 (1958)................................................................. 6

*Securities & Exch. Comm'n v. Dresser Indus., Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980)............................................... 10

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966)................................................................. 13

*Test v. United States*,
    420 U.S. 28 (1975)..............................................................11, 12

*United States v. (Under Seal)*,
    714 F.2d 347 (4th Cir. 1983)................................................... 10

*United States v. Al Mudarris*,
    695 F.2d 1182 (9th Cir. 1983)................................................. 16

*United States v. Beaty*,
    465 F.2d 1376 (9th Cir. 1972)................................................. 12

*United States v. Belton*,
    2015 WL 1815273 (N.D. Cal. Apr. 21, 2015)........................ 9

ii

*United States v. Bowling*,
   108 F. Supp. 3d 343 (E.D.N.C. 2015) ................................................................. 7

*United States v. Breslin*,
   916 F. Supp. 438 (E.D. Pa. 1996) ...................................................................... 7

*United States v. Calandra*,
   414 U.S. 338 (1974) ............................................................................................ 5

*United States v. Cerullo*,
   2007 WL 2683799 (S.D. Cal. Sept. 7, 2007) ..................................................... 7

*United States v. Ciambrone*,
   601 F.2d 616 (2d Cir. 1979) ............................................................................. 15

*United States v. Comey*,
   No. 25-cr-272-MSN-WEF (E.D. Va. 2025) ................................................. 3, 10

*United States v. Dorfman*, 5
   32 F. Supp. 1118 (N.D. Ill. 1981) ..................................................................... 15

*United States v. Fitzgerald*,
   2021 WL 1206556 (D. Md. Mar. 31, 2021) ...................................................... 12

*United States v. Hoey*,
   2014 WL 2998523 (S.D.N.Y. July 2, 2014) ...................................................... 14

*United States v. Hubbard*,
   474 F. Supp. 64 (D.D.C. 1979) ......................................................................... 13

*United States v. Johnston*,
   685 F.2d 934 (5th Cir. 1982) .............................................................................. 6

*United States v. Linton*,
   502 F. Supp. 861 (D. Nev. 1980) ...................................................................... 15

*United States v. McKenzie*,
   678 F.2d 629 (5th Cir. 1982) .............................................................................. 6

*United States v. McLernon*,
   746 F.2d 1098 (6th Cir. 1984) .......................................................................... 12

*United States v. Peralta*,
   763 F. Supp. 14 (S.D.N.Y. 1991) ....................................................................... 7

*United States v. Procter & Gamble Co.*,
   356 U.S. 677 (1958) .......................................................................................... 10

*United States v. Rosen,*
  471 F. Supp. 2d 651 (E.D. Va. 2007) ........................................................ 8, 9

*United States v. Sells Eng'g, Inc.,*
  463 U.S. 418 (1983) ........................................................................................ 6

*United States v. Singer,*
  660 F.2d 1295 (8th Cir. 1981) ...................................................................... 6

*United States v. Skelos,*
  2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ................................................ 9

*United States v. Stevens,*
  771 F. Supp. 2d 556 (D. Md. 2011) .............................................................. 7

*United States v. Twersky,*
  1994 WL 319367 (S.D.N.Y. June 29, 1994) ................................................ 7

*United States v. Vetere,*
  663 F. Supp. 381 (S.D.N.Y. 1987) ................................................................ 7

*United States v. Williams,*
  504 U.S. 36 (1992) ..................................................................................... 4, 5

*Vasquez v. Hillery,*
  474 U.S. 254 (1986) ..................................................................................... 5, 6

*Wells v. Murray,*
  831 F.2d 468 (4th Cir. 1987) ....................................................................... 13

*Wood v. Georgia,*
  370 U.S. 375 (1962) ................................................................................... 4, 13

**Statutes**

28 U.S.C. § 1861 ................................................................................................ 10

28 U.S.C. § 1867 ......................................................................................... 11, 12

**Other Authorities**

Federal Rule of Criminal Procedure 6 ..................................... 3, 8, 9, 17, 18

**Treatises**

1 S. Beale et al., *Grand Jury Law and Practice* (2d ed. 2021) ............... 5, 10

Susan Brenner & Lori Shaw, *Federal Grand Jury: A Guide to Law and Practice* (2d ed. 2021) .. 9

## INTRODUCTION

The conduct of purported U.S. Attorney Lindsey Halligan in the days and hours preceding the charges filed in this case has triggered this request by New York Attorney General Letitia James (AG James) for disclosure of certain grand jury records concerning (i) the proper empanelment of grand jurors, (ii) any *voir dire* questions presented or other screening done to the grand jury venire and individual grand jurors in this matter about any potential conflicts or bias, (iii) the introductory remarks and any legal instructions provided to jurors hearing evidence, and (iv) whether the government ensured that the Alexandria grand jury had access to all of the testimony previously obtained by the Norfolk grand jury. Two separate grand juries, presented to by separate prosecutors in two different Divisions of the Court, heard evidence, or perhaps a summary of evidence, in this case—first a grand jury seated in Norfolk, and then later, a grand jury seated in Alexandria. However, only one grand jury, with one attorney making the presentation,[1] was asked to and did return an indictment. This unique set of circumstances has opened the door for AG James to seek a narrow set of materials to assess whether the grand jury that brought the indictment was selected, presented to and instructed properly.

Since at least May 2025, prosecutors in the Norfolk Division of the U.S. Attorney's Office had been probing whether AG James had knowingly made false statements on a loan application.[2] The investigation was conducted by a federal grand jury empaneled in Norfolk, Virginia, which was presented with documents and testimony. But after a nearly five-month grand jury

---

[1] During the November 13, 2025 hearing in Alexandria, Judge Cameron McGowan Currie, sitting by designation, confirmed that Ms. Halligan was the only United States government attorney involved in the grand jury presentation on October 9, 2025 in this matter.

[2] Kristen Holmes et al., *DOJ struggles to build mortgage fraud case against Trump adversary Letitia James, sources tell CNN*, CNN (Sept. 17, 2025), https://www.cnn.com/2025/09/17/politics/letitia-james-mortgage-fraud-evidence.

investigation, which according to public reporting "featured interviews with dozens of witnesses," prosecutors in Norfolk reportedly concluded "they ha[d] not gathered enough evidence to indict Letitia James" for mortgage fraud.[3]  The Eastern District's then-U.S. Attorney, Erik Siebert, had reportedly himself told senior DOJ officials that investigators found insufficient evidence to bring charges against AG James.[4]

A memo summarizing the state of the case presented to then-U.S. Attorney Siebert, authored by a career prosecutor who had led the grand jury investigation into AG James in Norfolk, even "found evidence that would appear to undercut some of the allegations in the indictment of James . . . including the degree to which James personally profited from her purchase of the property."[5]  Career prosecutors in Norfolk "also expressed concern that the case could likely not be proven beyond a reasonable doubt because federal mortgage guidelines for a second home do not clearly define occupancy, a key element of the case, according to sources."[6]  The investigation of AG James in Virginia should have ended there.

Yet on October 9, 2025, purported interim U.S. Attorney Lindsey Halligan went before a grand jury in Alexandria, Virginia—not in Norfolk, where a different grand jury had heard evidence for months—and obtained a two-count indictment charging AG James with bank fraud,

---

[3] *Id.*; Peter Charalambous et al., *Trump officials pressuring federal prosecutors to bring criminal charges against NY AG Letitia James: Sources*, ABC News (Sept. 17, 2025), https://perma.cc/L59U-4BGT.

[4] Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

[5] Katherine Faulders et al., *Evidence Appears To Undercut Claims Against Letitia James, Prosecutors Found: Sources*, ABC News (Oct. 23, 2025), https://perma.cc/662U-NSBA.
AG James is separately seeking a copy of that memorandum, and any other proposed declination communications, as discovery relating to her pending vindictive and selective prosecution motion to dismiss.  D.E. 53.

[6] *Id.*

in violation of 18 U.S.C. § 1344, and false statements to a financial institution, in violation of 18 U.S.C. § 1014.  *See* D.E. 1.  Ms. Halligan alone presented the case to the Alexandria grand jury, and she alone signed the indictment.[7]  Reporting indicates that DOJ leadership was "caught off guard" by Ms. Halligan's presentment that day.[8]

Given the high profile and political nature of this case and its charges, it is important to understand what steps were taken to screen for biased grand jurors.  Among other concerning factors that undermine any presumption of regularity in this proceeding, the case involves immense pre-indictment publicity (including numerous statements by President Trump), the change in grand jury venue from Norfolk to Alexandria, and the firing of the career EDVA prosecutor (Elizabeth Yusi) who led the months-long grand jury investigation, only to be replaced, when the indictment was presented, by the President's hand-picked lawyer, Ms. Halligan.  In addition, the haste of the final presentation increases the risk of incomplete presentation of evidence and/or grand jury mis-instruction in this case.  *See, e.g.*, *United States v. Comey*, No. 25-cr-272-MSN-WEF, D.E. 191 (E.D. Va. Nov. 17, 2025) (ordering disclosure of grand jury materials to defense in light of Ms. Halligan's "misstatements of the law").[9]  To ensure that an unbiased and properly charged grand jury was empaneled and proper procedures in the grand jury room were followed, AG James seeks disclosure of the aforementioned four narrow categories of grand jury materials.  To be clear, she is not seeking grand jury testimony or deliberations, and the materials requested either are not covered by Rule 6 on grand jury secrecy or are defined as an exception to that rule.  Nor does AG

---

[7] *See supra* note 1.

[8] Pierre Thomas et al., *Pam Bondi, DOJ Officials Caught Off Guard By Tish James Indictment: Sources*, ABC News (Oct. 10, 2025, 10:47 AM), https://perma.cc/4A69-TMWF.

[9] As in the case of James Comey, this Court should review the entirety of the grand jury transcripts and the audio recording of proceedings in Alexandria to assess whether any similar misstatements of the law occurred that could compromise the integrity of the grand jury process in this case.

James seek any personal juror identifying information (names, addresses, telephone numbers, dates of birth, or Social Security numbers) for any individual(s) referred to in the four categories of grand jury information outlined herein.[10]

Defense counsel, via correspondence dated October 27, 2025, *see* D.E. 53-8 (Ex. H), has requested certain grand jury information from the government and explained that its requests are not prohibited by Federal Rule of Criminal Procedure 6(e), including any *voir dire* questions presented to potential grand jurors to determine any bias (Ex. H at 5, Request B); the record of any grand jurors who were summoned but excused from service (*id.*, Request C); material related to the use of grand jury transcripts from the Norfolk grand jury presented in the Alexandria grand jury (*id.*, Requests G & H); and any legal instructions provided to the Alexandria grand jury before the indictment was returned, as well as any instructions provided to the Norfolk grand jury (*id.*, Request I). As of this filing, the government has only provided a handful of Norfolk grand jury transcripts (7) in discovery. None of these include the information sought here. Depending on the other grand jury information obtained, including whether these and other grand jury transcripts and subpoena returns were presented or summarized during, or entirely omitted from, the Alexandria presentation, AG James may have additional grounds (other than those in her already-filed Motions to Dismiss) to seek dismissal of the indictment.

## ARGUMENT

### I.    ROLE OF THE GRAND JURY

#### A.  The Grand Jury Exists To Protect The Accused.

The grand jury is a check against unfounded prosecution—a bulwark between the accuser and the accused. *See Wood v. Georgia*, 370 U.S. 375, 390 (1962); *United States v. Williams*, 504

---

[10] For the avoidance of any doubt, AG James respectfully requests only anonymized information and not personal identifiers of any grand jurors in this matter.

U.S. 36, 47 (1992) (describing the grand jury as a "buffer or referee between the Government and the people").    "[T]he Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury'" in order to "protect[] citizens against arbitrary and oppressive governmental action." *United States v. Calandra*, 414 U.S. 338, 343 (1974); *see also Williams*, 504 U.S. at 51 (recognizing a defendant's constitutional right to "an independent and informed grand jury") (citation omitted).    Thus, the grand jury's function is not only to determine whether probable cause exists to charge an offense; it is also to protect from prosecution those for whom criminal charges are unfounded.    *See Calandra*, 414 U.S. at 343.

In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the same facts.    Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (alteration in original) (citation omitted).    "Since it has the power to refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh." *Gaither v. United States*, 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969) (citation omitted); 1 S. Beale et al., *Grand Jury Law and Practice* §1:7 (2d ed. 2001) ("The indicting grand jury—like the trial jury—may also shield the accused from criminal charges even though there is an adequate evidentiary basis if the grand jurors conclude that the charges are improperly motivated or unjust.").

**B. The Grand Jury Must Be Unbiased**.

There is no question that AG James is constitutionally entitled to an unbiased grand jury. The Supreme Court has "several times" ruled on the importance of an indictment being "returned by a legally constituted and nonbiased grand jury."  *Lawn v. United States*, 355 U.S. 339, 349 (1958); *Costello v. United States*, 350 U.S. 359, 363 (1956) (requiring a "legally constituted and unbiased grand jury").

With this requirement, it is crucial to determine whether the government screened the grand jury for bias because an improperly constituted grand jury is grounds for reversal.  *See Vasquez*, 474 U.S. at 263–64 (reversing conviction for discrimination in selecting the grand jury).  There is usually a presumption of regularity in grand jury proceedings. *United States v. Johnston*, 685 F.2d 934, 938 (5th Cir. 1982).  But "a reviewing court can neither indulge a presumption of [grand jury] regularity nor evaluate the resulting harm" when "constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment."  *Vasquez*, 474 U.S. at 263.

**C. The Grand Jury Must Receive Proper Legal Instructions**.

Although constitutionally independent, the "modern grand jury" relies extensively on the prosecution in discharging its duties.  *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430 (1983); *see also United States v. Singer*, 660 F.2d 1295, 1303 (8th Cir. 1981) (noting the prosecutor often "serves as the guiding arm of the grand jury") (citation omitted).  In addition to putting on evidence, the prosecutor "advises the lay jury on the applicable law."  *Sells Eng'g*, 463 U.S. at 430; *see also United States v. McKenzie*, 678 F.2d 629, 633 (5th Cir. 1982) (explaining "[t]he prosecutor may not involve himself in deliberations but may advise the grand jury as to its duty"). "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law to enable it intelligently to decide whether a crime has been

committed." *United States v. Twersky*, 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (citation omitted).

Where irregularities infect the grand jury process, courts will dismiss the indictment "'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (citations omitted). Because the prosecutor's guidance is the only guidance the grand jury receives, it is crucial that the prosecutor's statements of law be fair and accurate. Incorrect or misleading legal instructions can constitute error by preventing the grand jury from discharging its function of making an independent determination whether there was probable cause to believe an offense was committed.

Due to the inherently prejudicial impact of mis-instructing a grand jury, numerous courts have ordered dismissal of indictments based, at least in part, on erroneous legal instructions:

- *United States v. Bowling*, 108 F. Supp. 3d 343, 352–53 (E.D.N.C. 2015) (dismissing multiple counts where "the government's erroneous legal instruction to the grand jury concerning the Procurement Integrity Act played a significant and impermissible role in the grand jury's decision to indict");

- *United States v. Stevens*, 771 F. Supp. 2d 556, 564, 567–68 (D. Md. 2011) (dismissing indictment where prosecutor gave erroneous advice to grand jury on advice-of-counsel defense that negated wrongful intent);

- *United States v. Cerullo*, 2007 WL 2683799, at *3 (S.D. Cal. Sept. 7, 2007) (dismissing indictment where prosecutor's failure to explain an important legal issue accurately and fairly "misled the grand jury" and "prejudiced the Defendant");

- *United States v. Breslin*, 916 F. Supp. 438, 442–46 (E.D. Pa. 1996) (dismissing indictment on several grounds, but labeling "most disturbing" the prosecutor's erroneous legal instruction as to the grand jury's deliberation on a conspiracy charge);

- *United States v. Peralta*, 763 F. Supp. 14, 19–21 (S.D.N.Y. 1991) (dismissing indictment where there was "grave doubt that the decision to indict was free from the substantial influence" of the prosecutor's "misleading statements" of the law regarding constructive possession of a firearm); and

- *United States v. Vetere*, 663 F. Supp. 381, 386–88 (S.D.N.Y. 1987) (dismissing indictment, *even after a guilty verdict at trial*, on grounds that the independent role

7

of the grand jury was impaired based on the prosecutor's misleading "presentation both with respect to the facts and the law").

Given the transfer of the case to a separate grand jury in Alexandria, the improper appointment of Ms. Halligan as purported interim U.S. Attorney (D.E. 22, 56), the haste with which the indictment was brought after President Trump directed Attorney General Bondi to charge AG James (D.E. 53 at 16), and the fact that career supervisory prosecutors in the office reportedly declined to present the indictment, there is good reason to believe the protections afforded by law to insure grand jury independence were compromised in this case.

II.    **DISCLOSURE OF EMPANELMENT RECORDS, LEGAL INSTRUCTIONS, AND WHETHER THE ALEXANDRIA GRAND JURY WAS GIVEN ACCESS TO ALL PRIOR TESTIMONY AND EVIDENCE FROM THE NORFOLK GRAND JURY INVESTIGATION.**

A. **Nothing Prevents Disclosure of the Grand Jury Instructions and Empanelment Records Requested.**

The secrecy of grand jury proceedings is governed by Federal Rule of Criminal Procedure 6(e).[11]  Rule 6(e) applies to the *substance* of jury deliberations, the identity of grand jurors or expected witnesses, or evidence that is actually presented to the jury—not the ground rules by which the grand jury conducts its proceedings. *United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007).  The Fourth Circuit has interpreted Rule 6(e) to include, at its core, not only the matters actually "occurring before the grand jury" but also "anything that may reveal what has transpired before the grand jury." *In re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990) (citations omitted).  However, all we seek here is a narrow set of material, not explicitly precluded

---

[11] Rule 6(e)(2)(B) states: "Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury: (i) a grand juror; (ii) an interpreter; (iii) a court reporter; (iv) an operator of a recording device; (v) a person who transcribes recorded testimony; (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)."

by Rule 6(e), concerning the screening, empanelment and instructing of grand jurors—not what transpired in secrecy or what caused the grand jury to return the indictment it did.  The disclosure of such materials would not reveal the substance or essence of grand jury deliberations or some secret aspect of its inner workings that Rule 6(e) is designed to protect.

Courts in this District have cautioned against an overly expansive reading of Rule 6(e), noting that the rule is designed to protect the secrecy of substantive grand jury proceedings rather than procedural or administrative aspects.  *In re Grand Jury Proceedings*, 503 F. Supp. 2d 800, 808 (E.D. Va. 2007).  "Past decisions indicate that disclosures about the following might constitute Rule 6(e) violations: revelations of the identity of either grand jurors or expected witnesses; information about expected testimony of witnesses or likely questions; information that reveals the strategy or direction of a grand jury investigation (distinct from any outside investigations); or the date when a grand jury will return an indictment."  *United States v. Skelos*, 2015 WL 6159326, at *10 (S.D.N.Y. Oct. 20, 2015) (citing *Rosen*, 471 F. Supp. 2d at 655 (E.D. Va. 2007)).  Those are not the items contemplated or sought by AG James in this instance.

Commentators note that grand jury secrecy "does not govern matters such as the court's charge to a grand jury . . . ."  Susan Brenner & Lori Shaw, *Federal Grand Jury: A Guide to Law and Practice* § 16:11 (2d ed. 2021).  "The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings. The instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect."  *United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *see also In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002) (Posner, J.) ("[M]inisterial grand jury records, such as records reflecting the empaneling and extension of the grand jury, are not within the reach of

9

Rule 6(e) because they reveal nothing of substance about the grand jury's investigation." (quoting 1 S. Beale et al., *Grand Jury Law and Practice* (2d ed. 2001))).

Because Rule 6(e) does not apply to the narrow set of grand jury materials being requested here, and because of the fundamental importance of screening the grand jury venire and the individual grand jurors who heard evidence in this matter for political bias, the Court should order their disclosure.

### B.  In Any Event, Disclosure Would Be Justified Under Rule 6.

Rule 6 would permit disclosure even if it were applicable.  Rule 6(e) does not require "that a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury." *Securities & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc).  In *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958), the Supreme Court recognized that the secrecy of grand jury proceedings may be broken "where there is a compelling necessity" that is "shown with particularity."  *Id.* at 682; *see also Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) (disclosure of grand jury proceedings is appropriate "where the need for it outweighs the public interest in secrecy."); *United States v. (Under Seal)*, 714 F.2d 347, 350 (4th Cir. 1983), *cert. dismissed sub nom. Doe v. United States*, 464 U.S. 978 (1983) (stating that a court should not intervene in the grand jury process absent a "compelling reason").  This requirement applies, for example, where a defendant has demonstrated particularized need to warrant disclosure of the legal instructions or privileged evidence given to a grand jury.  *See Comey*, No. 25-cr-272-MSN-WEF, D.E. 161 (E.D. Va. Nov. 5, 2025) (on motion for disclosure, Magistrate Judge ordering the government to produce certain grand jury materials to the defense); *see also id.*, D.E. 167 (remanding decision for further proceedings to analyze whether there are particularized and factually based grounds for disclosure).

**1. Disclosure of Certain Juror Empanelment Records—Specifically, the Grand Jury List—Is Needed to Avoid Possible Injustice.**

The Jury Selection and Services Act of 1968 ("JSSA") provides that criminal defendants "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Section 1867(f) of the Act, in relevant part, provides:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion [challenging compliance with selection procedures]. . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

To determine compliance with that statute, on October 27, defense counsel requested access to certain records from the government with respect to grand jury proceedings, including but not limited to (i) "[t]he dates on which each such grand jury sat, the number of grand jurors present on those dates, and the dates on which each grand juror was in attendance," and (ii) "[t]he record of any grand jurors who were summoned but excused from service."[12] The government has not replied to AG James' requests seeking data about the grand jury's composition. AG James respectfully requests the Court compel the production of those records or information.

Without inspection of this data, AG James is unable to assess whether the grand jury that returned the indictment in Alexandria was selected, and treated, in accordance with the provisions of the JSSA, and, accordingly, whether she has a potentially meritorious jury challenge. *See Test v. United States*, 420 U.S. 28, 30 (1975) (affirming defendant's right under the JSSA to inspect jury lists to challenge the selection process to ensure grand and petit juries are selected from a fair cross-section of the community). The attendance record and reasons for absence are also

---

[12] D.E. 53-8 (Ex. H) at 5 (10/27/25 Discovery Letter).

necessary to ensure that, even assuming the grand jury represented a fair cross-section of the community, a quorum was present and, given the peculiar way the case was presented (e.g., what was read or summarized by Ms. Halligan), whether the grand jurors who voted on the indictment were the same grand jurors who heard the "evidence."

It is well established that, under 28 U.S.C. § 1867(f), "a litigant has essentially an unqualified right" to this inspection. *Test*, 420 U.S. at 30; *United States v. Fitzgerald*, 2021 WL 1206556, at *5 (D. Md. Mar. 31, 2021) (reaffirming *Test*). As the Supreme Court has explained, "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Test*, 420 U.S. at 30; *see also United States v. Beaty*, 465 F.2d 1376, 1382 (9th Cir. 1972) (holding defendant "had a right to make the inspection before he made a motion to challenge the jury under § 1867(a)"). The same principles, and standard for inspection, apply for both grand and petit juries. 28 U.S.C. § 1867(a). Access to the relevant records may not be conditioned on a defendant first showing a probability of success on the merits of the jury challenge. *See United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) ("[w]e can certainly envision a situation in which a defendant must be afforded access to the names, addresses, and demographics of those jurors who returned the indictment *in order to* vindicate the 'unqualified' right to inspection and to insure that the jury actually represented a wide spectrum of the community."). Thus, Section 1867(f) entitles AG James to inspect records regarding the grand jurors who returned the indictment in this case to ensure compliance with the statute.

**2. Disclosure of Questioning Conducted to Screen the Venire and Individual Grand Jurors In This Matter For Any Political Bias Is Needed to Avoid Possible Injustice.**

As these charges revolve around a well-known public official whom President Trump has been outspoken against for years, *see James*, D.E. 53, 53-1, and the pre-indictment investigation

12

was the subject of significant media attention, the risk of political or other bias within the grand jury was necessarily heightened (e.g., among other things, President Trump called AG James "a racist"). It is thus squarely relevant to AG James' right to an unbiased grand jury whether the grand jury venire was properly screened for bias. Additionally, to ensure that the grand jurors asked to consider an indictment would not indict AG James based upon any prejudice rather than on the merits of the prosecution's case, it would not have been difficult to briefly question all individual grand jurors in the *James* matter about any possible conflicts or bias. Given the high-profile nature of the individuals involved in the case, the significant pre-indictment publicity in this District, the change in grand jury venue from Norfolk to Alexandria, the change in leadership prosecuting the case, and the nature of the charges being sought, specific questions should have and could easily have been asked to elicit conscious and unconscious prejudices of the jurors concerning political affiliation and/or political views.

Such screening is routine in selecting trial juries, *see, e.g.*, *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966); *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987) (citation omitted) ("[W]hen external events such as pretrial publicity raise a strong possibility of jury bias, the court has a duty to determine whether the accused may have a fair trial. Inquiry into jury bias typically entails an evaluation of 'the pre-trial publicity complained of and its impact, if any, on the jury, as developed through adequate voir dire examination of the jurors'"); *United States v. Hubbard*, 474 F. Supp. 64, 78 (D.D.C. 1979) ("Voir dire is the appropriate means for determining whether a fair and impartial jury can be selected"), but if the grand jury is going to fulfill its function to sort out and bring only charges based on the facts and law, then these same protections should apply to prohibiting biased people from serving on this body as well. *See Wood*, 370 U.S. at 390 (recognizing a defendant's constitutional right to "an independent and informed grand jury").

13

### 3. Disclosure of How Grand Jurors Were Instructed on the Law Is Also Needed to Avoid Possible Injustice.

Given public reporting that the career prosecutors who investigated this case (who were all fired or resigned from DOJ) had serious misgivings about there being any crimes provable beyond a reasonable doubt—as well as the change in grand jury venue from Norfolk to Alexandria, and the installment of a brand-new prosecutor who was not a part of the months' long investigation—it is even more important to review the legal instructions given to the grand jury in this case, as well as the answers to any legal questions from members of the grand jury, to ensure they did not include incorrect statements about the law.  It is not uncommon to disclose narrow grand jury materials in a case like this one, and nothing here would prevent their disclosure.  *See United States v. Hoey*, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (ordering in camera review of limited grand jury minutes that reflect the instructions provided to jurors where defendant provided "more than mere speculation that the grand jury did not receive the proper instructions" on a charging element).  Given the nature of these charges and questions about whether evidence supported the charges—as well as the partial information provided on the indictment's face (e.g., no tax year specified for "Schedule E tax form(s)" (Indict. ¶ 10); alleging "ill-gotten gains of approximately $18,933 over the life" of the 30-year loan, even though it has only been five years not 30 (*Id.* ¶ 8))—it is not speculation to seek clarification on how the grand jury was instructed on the law and how the government answered any legal questions posed by the grand jurors.

Absent an examination of Ms. Halligan's introductory remarks and any legal instructions provided, it will be impossible for defense counsel to determine whether instructional error may have infected the grand jury proceedings in this case, in either venue, and whether any grounds exist for a future motion to dismiss the indictment on issues the rules contemplate can be disclosed for such purposes.  Additionally, disclosure of any introductory remarks and the legal instructions

given may provide additional support for AG James' argument that she would not have been prosecuted but for the President's animus toward AG James.

### 4. Disclosure of Whether Transcripts of Witness Testimony and Other Evidence Taken By the Norfolk Grand Jury Was Presented to the Alexandria Grand Jury Is Also Needed to Avoid Possible Injustice.

Two separate grand juries in two different Divisions of the Court—one in Norfolk empaneled throughout the summer of 2025, and a second in Alexandria, empaneled in or around October 2025—heard evidence presented by separate prosecutors. However, only the Alexandria grand jury, with Ms. Halligan having made that presentation alone on October 9, was asked to and did return an indictment. *Id.* It is relevant to determining whether these facially irregular proceedings were infected by Constitutional or other legal error to understand whether and how the evidence gathered by the Norfolk grand jury—including transcripts of witness testimony and grand jury subpoena returns—were presented, if at all, to the Alexandria grand jury that was asked to return an indictment, and whether the presentation relied upon excessive hearsay evidence alone. While prosecutors have discretion about what evidence they present to a grand jury, they are prohibited from misleading the grand jury or engaging in fundamentally unfair tactics. For instance, prosecutors may not obtain an indictment based on perjurious evidence or by leading the grand jury to believe it has received eyewitness testimony when it has only received hearsay testimony. *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979).

Similarly, while a prosecutor need not present all exculpatory evidence in its possession to the grand jury, she must avoid misleading the grand jury through an improperly selective presentation of the evidence. *United States v. Dorfman*, 532 F. Supp. 1118, 1133 (N.D. Ill. 1981); *see also United States v. Linton*, 502 F. Supp. 861, 871 (D. Nev. 1980) (explaining that summary evidence may be presented but cannot substantially misstate relevant and crucial evidence to the

15

extent that grand jurors are misled). Again, reporting[13] and government discovery provided to the defense[14] indicate that the government was in possession of critical evidence exculpating AG James and had prepared a "memo summarizing" it. This would be the case to determine whether the government fulfilled its obligation for fairness in this regard. *See* Justice Manual (JM) § 9-11.233 ("It is the policy of the [DOJ], . . . that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person."). And, assuming the Alexandria grand jury was presented only with a summary of evidence provided by Ms. Halligan (through a summary agent witness or otherwise), courts have cautioned against abusing the use of a summary witness device to pressure grand jurors or to otherwise discourage them from evaluating the underlying evidence. *See, e.g.*, *United States v. Al Mudarris*, 695 F.2d 1182, 1187 (9th Cir. 1983).

Government discovery already produced in this case reveals that at least seven witnesses testified before the Norfolk grand jury between May 7, 2025 and August 6, 2025. But critically, discovery so far does not reveal what evidence was put before the Alexandria grand jury, what evidence heard by the Norfolk grand jury (if any) was omitted, and to what extent Ms. Halligan relied on a summary witness presenting only hearsay. Any omissions by Ms. Halligan may prove critical to effectively challenge the charges filed in this case before trial, such as by proving jurors were shown an incomplete (and perhaps skewed) presentation of the evidence against AG James. This unique set of circumstances—and the fact that Ms. Halligan presented this case alone in

---

[13] *See* Faulders et al., *supra* note 5.

[14] Materials produced include communications among Fannie Mae investigators calling into question whether there was "clear and convincing evidence" of any "occupancy fraud," a standard lower than the proof beyond reasonable doubt that would be required for a conviction.

Alexandria after *not* having been the prosecutor who presented and questioned witnesses in the Norfolk grand jury room (conducted by the career AUSA leading the investigation at the time, who was later fired by Ms. Halligan, *see* ECF 53 at 18–19)—has opened the door for AG James to seek information on whether the Alexandria grand jury was presented with and/or given access to all prior testimony and evidence taken by the Norfolk grand jury in this case.[15]

### 5. The Need for Disclosure Is Greater Than the Need for Continued Secrecy.

The need for limited disclosure of the four categories of material requested is greater than the need for continued secrecy under Rule 6(e), if 6(e)'s limitations apply at all. Given AG James' position as a law enforcement officer herself, there is no threat of her tampering with witnesses or obstructing the proceedings in any way. Further, disclosure of the legal instructions provided to the grand juries in both Norfolk and Alexandria, the narrow set of empanelment records sought, and whether the Alexandria grand jury was given access to all prior witness testimony and evidence gathered by the Norfolk grand jury, will not reveal any substance of the jurors' deliberations or identities, and therefore will not dissuade future grand jurors from participating in the investigative process.

On the other hand, the need for disclosing the narrow set of grand jury materials being requested is high. After a nearly five-month grand jury investigation, which per public reporting, "featured interviews with dozens of witnesses," prosecutors in Norfolk concluded "they ha[d] not

---

[15] In the government's *Notice of Compliance with Judicial Order* filed on November 6, 2025, D.E. 48, the government notes that it provided the Court with "the transcript of the Grand Jury proceedings and electronic communications," "the recorded introduction, presentation, and conclusion," and a transcript of the same. *Id.* at 1. The filing does not indicate whether transcripts of witness testimony before the Norfolk grand jury—including any that contain exculpatory material—were presented to the Alexandria grand jury. That omission, if proven to be true, is significant in AG James' case.

gathered enough evidence to indict Letitia James" for mortgage fraud.[16]  And U.S. Attorney Siebert had reportedly told senior DOJ officials that prosecutors had found insufficient evidence to bring charges against AG James.[17]  After those same Norfolk prosecutors had put witnesses before the grand jury and reviewed the evidence—and "expressed concern that the case could likely not be proven beyond a reasonable doubt"[18]—they were removed from the investigation and fired from DOJ by Ms. Halligan.[19]  It was Ms. Halligan acting alone[20]—not the prosecutors who had presented to and instructed the Norfolk grand jury—who presented to and instructed grand jurors in Alexandria, which returned an indictment charging AG James.  D.E. 1.  Accordingly, no one can be sure of the legal instructions (if any) she provided, the questions she asked to ensure the grand jury was acting freely of any bias or conflict (if any), or whether transcripts of witness testimony and other evidence before the Norfolk grand jury were presented to the Alexandria grand jury in full, in part or not at all.

Disclosing this limited set of material to the defense will ensure that the second grand jury was presented with a *complete* picture of the evidence (and one not based on excessive hearsay testimony alone), was *not* misled by Ms. Halligan, and found probable cause that AG James committed an *actual crime*.  Because the need for the materials requested is greater than the need for continued secrecy under Rule 6, the Court should order their disclosure in this case.

---

[16] Charalambous, *supra* note 3; Holmes et al., *supra* note 2.

[17] Thrush et al., *supra* note 4.

[18] Faulders et al., *supra* note 5.

[19] Kristen Holmes et al., *Exclusive: Senior prosecutor removed as Lindsey Halligan reshapes key US attorney's office*, CNN (Oct. 13, 2025), https://www.cnn.com/2025/10/13/politics/federal-prosecutor-maggie-cleary-removed; Kristen Holmes, *Lindsey Halligan fires more prosecutors in key US attorney's office*, CNN (Oct. 17, 2025), https://www.cnn.com/2025/10/17/politics/lindsey-halligan-ousts-more-prosecutors-eastern-district-virginia.

[20] *Supra* note 1; *see also* Thomas et al., *supra* note 8.

**6.  The Request is Limited in Scope.**

Finally, AG James' request for these grand jury materials is limited in scope and particularized.  This motion requests (i) access to empanelment records of the jurors; (ii) any questions presented to screen the grand jury venire and the individual grand jurors who heard evidence in this matter for political bias; (iii) the prosecution's legal instructions to the grand jury; and (iv) whether transcripts of witness testimony and other evidence gathered by the Norfolk grand jury—including any that contain exculpatory material—were presented to the Alexandria grand jury.  AG James is *not* seeking the substance of jury deliberations or evidence that was actually presented to the grand jury.

**CONCLUSION**

For the foregoing reasons, the Court should order the government to produce, or provide AG James with access to, the requested grand jury materials.

A Proposed Order is attached.

Dated:  November 17, 2025

Respectfully submitted,

/s/ *Abbe David Lowell*

Abbe David Lowell (*admitted pro hac vice*)
David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
John P. Bolen (*admitted pro hac vice*)
Schuyler J. Standley (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*Attorneys for Letitia A. James*

/s/ *Andrew Bosse*

Andrew Bosse (VSB No. 98616)
BAUGHMAN KROUP BOSSE PLLC
500 E. Main Street, Suite 1400
Norfolk, VA 23510
Tel: (757) 916-5771
ABosse@bkbfirm.com