# Exhibit A

Case 2:25-cr-00122-JKW-DEM    Document 109-1    Filed 11/17/25    Page 2 of 13 PageID# 1087



**U.S. Federal Housing FHFA**

Constitution Center
400 7th Street, S.W.
Washington, D.C. 20219
Telephone: (202) 649-3800
Facsimile: (202) 649-1071
www.fhfa.gov

April 14, 2025

The Honorable Pamela J. Bondi
The Honorable Todd Blanche
Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

RE:    ***CRIMINAL REFERRAL***

Dear Attorney General Bondi and Deputy Attorney General Todd Blanche:

Pursuant to my authority as Director of the U.S. Federal Housing Finance Agency ("U.S. Federal Housing" or "FHFA"), I am referring the matter below. As regulator of Fannie Mae, Freddie Mac, and the Federal Home Loan Banks, we take very seriously allegations of mortgage fraud or other criminal activity. Such misconduct jeopardizes the safety and soundness of FHFA's regulated entities and the security and stability of the U.S. mortgage market.

In the course of exercising U.S. Federal Housing's authorities under the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, U.S. Federal Housing has identified matters that are appropriate for referral to the U.S. Department of Justice for consideration of criminal prosecution.

Based on media reports, Ms. Letitia James has, in multiple instances, falsified bank documents and property records to acquire government backed assistance and loans and more favorable loan terms. This has potentially included 1) falsifying residence status for a Norfolk, Virginia-based home in order to secure a lower mortgage rate and 2) misrepresenting property descriptions to meet stringent requirements for government backed loans and government assistance.

**Background:**

███ *Sterling Street, Norfolk, VA 23505*

On August 17, 2023, Ms. James granted Ms. Shamice Thompson-Hairston power of attorney to make a Virginia property her "principal residence." **See Exhibit A**. And on August 30 and 31, 2023, through her attorney, Ms. James purchased this property in Norfolk, VA. In a Fannie Mae/Freddie Mac Form 3047 and in mortgage documents, she reaffirmed this would be her primary residence, despite being a statewide public office holder in the state of New York at that same time and primarily residing in the state of New York. **See Exhibit B.**

In fact, a building permit issued on her New York property on July 15, 2024 lists her New York property as the "JAMES RESIDENCE" and states "Remain Occupied":

```
26  Owner's Information
            Name: LETITIA JAMES
    Relationship to Owner: SELF
        Business Name: JAMES RESIDENCE           Business Phone:
        Business Address:                        Business Fax:
              E-Mail:                            Owner Type: INDIVIDUAL
          Non Profit:  ☐ Yes   ☒ No

    Yes  No
     Y   ☐   Owner's Certification Regarding Occupied Housing (Remain Occupied)
     ☐   N   Owner's Certification Regarding Occupied Housing (Rent Control / Stabilization)
     ☐   ☐   Owner DHCR Notification
     ☐   ☐   Owner's Certification for Adult Establishment
     ☐   ☐   Owner's Certification for Directive 14 (if applicable)
```

Primary residence mortgages receive more favorable loan terms, including lower interest rates, than secondary residence mortgages. Lenders view secondary residence mortgages as significantly riskier, as a borrower is more likely to continue paying off a primary residence mortgage during any financial hardship. Interest rates on secondary residence mortgages are typically between 0.25-0.50% higher than their primary residence counterparts; however, this gap can widen depending on the lender. At the time of the 2023 Norfolk, VA property purchase and mortgage, Ms. James was the siting Attorney General of New York and is required by law to have her primary residence in the state of New York—even though her mortgage applications list her intent to have the Norfolk, VA property as her primary home. It appears Ms. James' property and mortgage-related misrepresentations may have continued to her recent 2023 Norfolk, VA property purchase in order to secure a lower interest rate and more favorable loan terms.

■ *Lafayette Avenue, Brooklyn, NY 11238*

A January 26, 2001 certificate of occupancy lists this property as having five units. **See Exhibit C.** On February 14, 2001, Ms. Letitia James purchased this five-family dwelling. Ms. James secured a conforming loan through the Fannie Mae/Freddie Mac Form 3033. Conforming loans are only available on 4 unit or less structures. Spanning the last two decades, Ms. James has consistently misrepresented the same property as only having four units in both building permit applications and numerous mortgage documents and applications. This even includes a 2011 application for the Home Affordable Modification Program ("HAMP"). **See Exhibit D**. And most recently a 2019 mortgage refinancing through a Fannie Mae and Freddie Mac lender. **See Exhibit E.**

Conforming loans, or Fannie Mae and Freddie Mac-backed mortgages, have favorable rates and terms to traditional private market mortgages for the explicit purpose of availability to lower and middle-income borrowers. Conforming single-family loans are subject to a cap of four dwellings per property. A building that exceeds four units must be treated as a multifamily property, and typically has larger down payment requirements and higher interest rates terms—with interest rates being between 0.75-1 percent higher—due to lenders viewing multifamily loans as significantly riskier. Additionally, the government's Home Assistance Modification Program ("HAMP") was started in 2008 to provide homeowners at risk of foreclosure with reduced monthly mortgage payments, and recipients had to have properties with four dwellings or less. It appears

that Ms. James may have listed the Brooklyn, NY property as four units instead of five units in order to meet the conforming loan requirements, and thus receive better interest rates. Ms. James also appears to have used this same falsification in order to receive mortgage assistance through HAMP.

**Analysis:**

Ms. James, for both properties listed above, appears to have falsified records in order to meet certain lending requirements and receive favorable loan terms.

U.S. Federal Housing FHFA believes this and other alleged misconduct could be violations of the criminal code under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1014 (false statements to a financial institution), and/or other relevant state and federal laws.

For your reference, I have also attached documentation which shows in 1983 that Ms. James and her father signed mortgage documents that stated that they were husband and wife in order to secure a home mortgage. **See Exhibit F.** Then, on May 4, 2000, Ms. James was listed again as "husband and wife" in documents. **See Exhibit G.** While this was a long time ago, it raises serious concerns about the validity of Ms. James representations on mortgage applications.

There are unfortunately too many examples of individuals who commit fraud or mortgage fraud. Just last year, a federal jury convicted Marilyn J. Mosby of Baltimore, Maryland, on the federal charge of making a false mortgage application when she was Baltimore City State's Attorney, relating to the purchase of her property in Florida. Just last week, after the hard work of our agency's IG and the DOJ, a St. Louis man plead guilty to fraudulently obtaining home mortgages.

As always, we look forward to cooperating with the Department of Justice to support any actions that the Department of Justice finds appropriate. U.S. Federal Housing FHFA appreciates the Department of Justice's support in ensuring the protection of American homebuyers and taxpayers from mortgage fraud and other financial misconduct.

Respectfully submitted,

William J. Pulte
Director, U.S. Federal Housing FHFA

# EXHIBIT A

**SPECIFIC POWER OF ATTORNEY**
(Purchase of Real Estate)

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, **LETITIA A. JAMES**, does hereby constitute and appoint **SHAMICE THOMPSON-HAIRSTON** of the City of _Norfolk_, State of _Virginia_, as her Attorney-in-Fact for her in her name, place, and stead, to undertake and to do all acts necessary to complete the purchase of the Property known as ▮ Sterling Street, Norfolk, Virginia 23505.

(1) Execution of the Deed of Trust in a loan amount not to exceed $225,000.00
(2) Execution of Real Estate Settlement Procedures Act Forms;
(3) Execution of Note; miscellaneous loan closing documents in a loan amount not to exceed $225,000.00; and
(4) Execution of Purchase Agreements and Addendums with a sales price not to exceed 250,000.00

I HEREBY DECLARE that I intend to occupy this property as my principal residence.

I HEREBY DECLARE that any act or thing done hereunder, by my said Attorney-in-Fact shall be binding on myself, my heirs, my legal and personal representatives, and assigns only insofar as they are consistent with the powers granted herein.

I HEREBY RATIFY all that my said Attorney-in-Fact shall lawfully do or cause to be done by virtue of these powers.

THIS POWER OF ATTORNEY shall not be affected by the subsequent disability or incompetence of said principal.

THIS POWER OF ATTORNEY CAN BE REVOKED OR TERMINATED ONLY BY A WRITING COMMUNICATED TO AND RECEIVED BY MY ATTORNEY-IN-FACT PRIOR TO MY ATTORNEY-IN-FACT EXERCISING SUCH POWER.

THIS POWER OF ATTORNEY SHALL EXPIRE: August 7, 2024

TAX ID#: ▮

Prepared by: John M. McCormick (VSB#80676)         Return to: TitleQuest of Hampton Roads, LLC
McCormick Law & Consulting                                   828 Greenbrier Pkwy, Suite 100
101 Granby Street, Suite 200                                      Chesapeake, VA 23320
Norfolk, VA 23510

Page 1 of 2

---

IN WITNESS WHEREOF, the said **Letitia A. James** has affixed her signature and seal on this _17th_ day of _August_, 2023.

_Letitia A. James_ (signature)

STATE OF: _New York_
CITY/COUNTY OF: _New York_   to wit:

The foregoing instrument was acknowledged, subscribed to, and executed before me this _17th_ day of _August_, 2023, by Letitia A. James. In addition, Letitia A. James is personally known to me or has produced appropriate identification.

Notary Public: _(signature)_
My Commission Expires: _April 14, 2024_
My Registration No.: _01CR6145293_

JULIUS CROCKWELL
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CR6165293
QUALIFIED IN QUEENS COUNTY
MY COMMISSION EXPIRES APR 14, 2024

On the date last above written, declared to us, the undersigned, that the foregoing instrument was her Specific Power of Attorney and requested us to act as witnesses to it. That to the best of our knowledge, Letitia A. James was of eighteen years of age or over, of sound mind, and under no constraint or undue influence. Letitia A. James thereupon signed this Specific Power of Attorney in our presence, all of us being present at the same time. We now, at her request, in her presence and in the presence of each other, subscribe our names as witnesses.

Executed on _August 17, 2023_ in _New York County, NYS_

We declare under penalty of perjury that the foregoing is true and correct.

_(signature)_
[signature – please print name under this line]
JENNIFER LEVY

▮ Parkside the
Brooklyn NY 11226
[address]

_Sharona Parchment_ (signature)
[signature – please print name under this line]
SHARONA PARCHMENT

▮ Pine Street
Staten Island NY 10301
[address]

Page 2 of 2

# EXHIBIT B




LOAN #: ▮▮▮▮

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

22. **Grounds for Acceleration of Debt.**
(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

23. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

24. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement as Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

25. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only

VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3047 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.         Page 9 of 11                 VAEFHA15DE  1120
                                                                   VAEDEED (CLS)
                                                                   08/31/2023 11:56 AM PST

VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3047 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.         Page 10 of 11                VAEFHA15DE  1120
                                                                   VAEDEED (CLS)
                                                                   08/31/2023 11:56 AM PST

---

LOAN #: ▮▮▮▮

if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

26. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Shamice Thompson-Hairston_                                8/31/23  (Seal)
SHAMICE THOMPSON-HAIRSTON                                  DATE

Shamice Thompson-Hairston as Attorney in
Fact for Letitia A. James
                                                           8/31/23  (Seal)
SHAMICE THOMPSON-HAIRSTON, AS ATTORNEY-IN-FACT FOR LETITIA A. JAMES    DATE

Commonwealth of VIRGINIA
City/County of NORFOLK

The foregoing instrument was acknowledged before me this AUGUST 31, 2023 (date) by SHAMICE THOMPSON-HAIRSTON AND SHAMICE THOMPSON-HAIRSTON, AS ATTORNEY-IN-FACT FOR LETITIA A JAMES.

Notary Seal



MICHELLE R NORFLEET
Notary Public – Reg. # 301934
Commonwealth of Virginia
My Commission Expires Apr. 30, 2025

Notary Public's signature

Notary registration number: 301934
My commission expires: 4/30/2025

Lender: American Neighborhood Mortgage Acceptance Company LLC.
NMLS ID: 338923
Loan Originator: Mike Voci
NMLS ID: 1380990

VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3047 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.         Page 11 of 11                VAEFHA15DE  1120
                                                                   VAEDEED (CLS)
                                                                   08/31/2023 11:56 AM PST




## EXHIBIT C



### THE CITY OF NEW YORK
### DEPARTMENT OF BUILDINGS
### CERTIFICATE OF OCCUPANCY

**BOROUGH** BROOKLYN  **DATE:** JAN 26 2001  **NO.** ▮

This certificate supersedes C.O. NO  **ZONING DISTRICT** R-6
THIS CERTIFIES that the new—altered—existing—building—premises located at
▮ LAFAYETTE AVENUE  **Block** 1947  **Lot** 21
CONFORMS SUBSTANTIALLY TO THE APPROVED PLANS AND SPECIFICATIONS AND TO THE REQUIREMENTS OF ALL APPLICABLE LAWS, RULES, AND REGULATIONS FOR THE USES AND OCCUPANCIES SPECIFIED HEREIN.

#### PERMISSIBLE USE AND OCCUPANCY

| STORY | LIVE LOAD LBS. PER SQ. FT. | MAXIMUM NO. OF PERSONS PERMITTED | ZONING DWELLING OR ROOMING UNITS | BUILDING CODE HABITABLE ROOMS | ZONING USE GROUP | BUILDING CODE OCCUPANCY GROUP | DESCRIPTION OF USE |
|---|---|---|---|---|---|---|---|
| CELLAR | OG | | | | | | ORDINARY USE, BOILER ROOM |
| BASEMENT | 40 | | 1 | 3 | 2 | RES. | ONE FAMILY |
| FIRST | 40 | | 1 | 2 | 2 | RES. | ONE FAMILY |
| SECOND | 40 | | 1 | 2 | 2 | RES. | ONE FAMILY |
| THIRD | 40 | | 2 | 2 | 2 | RES. | TWO FAMILY |
| | | | | | | | TOTAL: FIVE (5) FAMILY DWELLING |

OPEN SPACE USES _____
(SPECIFY—PARKING SPACES, LOADING BERTHS, OTHER USES, NONE)

**NO CHANGES OF USE OR OCCUPANCY SHALL BE MADE UNLESS A NEW AMENDED CERTIFICATE OF OCCUPANCY IS OBTAINED**
THIS CERTIFICATE OF OCCUPANCY IS ISSUED SUBJECT TO FURTHER LIMITATIONS, CONDITIONS AND SPECIFICATIONS NOTED ON THE REVERSE SIDE.

BOROUGH SUPERINTENDENT   Acting Commissioner  BKLN-2
COMMISSIONER

☐ ORIGINAL   ☐ OFFICE COPY - DEPARTMENT OF BUILDINGS   ☐ COPY

# EXHIBIT D

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 11 |
|---|---|---|
| **Document ID:** | Document Date: 08-23-2011 | Preparation Date: 10-19-2011 |
| Document Type: MORTGAGE AND CONSOLIDATION | | |
| Document Page Count: 9 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| INTRACOASTAL ABSTRACT CO., INC. | OCWEN LOAN SERVICING, LLC |
| 31 STEWART STREET | 1661 WORTHINGTON ROAD - SUITE 100 |
| CO -PICK UP USTA | ATTN: LINDA KAY ESTEP |
| FLORAL PARK, NY 11001 | WEST PALM BEACH, FL 33409 |
| 516-358-0505 | 561-682-8835 |
| 1273 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1947 | 21 | Entire Lot | LAFAYETTE AVENUE |

Property Type: DWELLING ONLY - 4 FAMILY

### CROSS REFERENCE DATA

**CRFN:**

x  Additional Cross References on Continuation Page

### PARTIES

| **MORTGAGOR:** | **MORTGAGEE:** |
|---|---|
| LETITIA JAMES | US BANK NA, AS TRUSTEE |
| LAFAYETTE AVENUE | C/O OCWEN LOAN SERVICING, LLC, 1661 |
| BROOKLYN, NY 11238 | WORTHINGTON ROAD - SUITE 100 |
| | WEST PALM BEACH, FL 33409 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 585,929.55 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 29,033.17 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 145.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 290.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 72.50 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 87.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed    12-07-2011 15:31 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 594.50 | 2011000427870 | | |
| Recording Fee: | $ | 82.00 | | | |
| Affidavit Fee: | $ | 8.00 | *Annette M Hill* | | |
| | | | *City Register Official Signature* | | |

# EXHIBIT E

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

**RECORDING AND ENDORSEMENT COVER PAGE** — PAGE 1 OF 8

**Document ID:** [redacted]
Document Type: MORTGAGE
Document Page Count: 7
Document Date: 08-23-2019
Preparation Date: 08-29-2019

**PRESENTER:**
SERVICELINK HOME EQUITY
1355 CHERRINGTON PKWY
MOON TOWNSHIP, PA 15108
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
SERVICELINK
1355 CHERRINGTON PARKWAY
MOON TOWNSHIP, PA 15108
SUPPORT@SIMPLIFILE.COM

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1947 | 21 | Entire Lot | [redacted] LAFAYETTE AVENUE |

Property Type: DWELLING ONLY - 4 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ or DocumentID_____ or _____Year____ Reel____ Page____ or File Number_____

**PARTIES**

**MORTGAGOR/BORROWER:**
LETITIA JAMES
[redacted] LAFAYETTE AVE
BROOKLYN, NY 11238

**MORTGAGEE/LENDER:**
CITIBANK NA
1000 TECHNOLOGY DRIVE
O'FALLON, MO 63368

**FEES AND TAXES**

| Mortgage: | | |
|---|---|---|
| Mortgage Amount: | $ | 100,000.00 |
| Taxable Mortgage Amount: | $ | 100,000.00 |
| Exemption: | | |
| TAXES: County (Basic): | $ | 500.00 |
| City (Additional): | $ | 1,000.00 |
| Spec (Additional): | $ | 0.00 |
| TASF: | $ | 250.00 |
| MTA: | $ | 300.00 |
| NYCTA: | $ | 0.00 |
| Additional MRT: | $ | 0.00 |
| TOTAL: | $ | 2,050.00 |
| Recording Fee: | $ | 72.00 |
| Affidavit Fee: | $ | 0.00 |

| | | |
|---|---|---|
| Filing Fee: | $ | 0.00 |
| NYC Real Property Transfer Tax: | $ | 0.00 |
| NYS Real Estate Transfer Tax: | $ | 0.00 |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed 08-30-2019 15:23
City Register File No.(CRFN): [redacted]

*Annette M Hill*
**City Register Official Signature**

## EXHIBIT F

**STATE OF NEW YORK**

**MORTGAGE**

This form is used in connection with mortgages insured under the one to four-family provisions of the National Housing Act.

THIS MORTGAGE, made the 20TH day of MAY, 19 83 between ROBERT JAMES AND LETITIA JAMES, HIS WIFE

who reside(s) at [redacted] 132ND ST., RICHMOND HILL, NEW YORK

REEL 1529 PAGE 1110

the MORTGAGOR

and KADILAC FUNDING LTD.,
a corporation organized and existing under the laws of the State of New York and having its principal place of business at 1 OLD COUNTRY ROAD, BOX 34, CARLE PLACE, NEW YORK

The MORTGAGEE.
WITNESSETH that to secure the payment of an indebtedness in the principal sum of THIRTY THOUSAND THREE HUNDRED AND NO/100 Dollars ($ 30,300.00 which sum is to be paid, with interest thereon, according to a certain bond or obligation bearing even date herewith, the Mortgagor hereby mortgages to the Mortgagee:

All that certain lot, piece, or parcel of land with the buildings and improvements thereon erected, situate, lying, and being in the

BOROUGE AND COUNTY OF QUEENS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

[redacted]

TOGETHER WITH THE BENEFITS AND SUBJECT TO THE BURDENS OF A CERTAIN RIGHT OF WAY IN LIBER 3034 PAGE 120.

Fixtures and personality include, without being limited to:

Said premises being known as: [redacted] NWOOD STREET, JAMAICA, NEW YORK 11420

The real property is improved by a ONE family residence only.

Together with all the right, title and interest of the mortgagors of in and to any land lying in the bed of the street in front of and adjoining above premises to the center lines thereof.

FG 92159M(1/79)

IN WITNESS WHEREOF, this mortgage has been duly executed by the Mortgagor.

_____ (L.S.)
ROBERT JAMES

_____ (L.S.)
LETITIA JAMES

_____ (L.S.)

_____ (L.S.)

In presence of  Jack Bleier

STATE OF NEW YORK,
COUNTY OF NASSAU } ss:

On the 20TH day of MAY nineteen hundred and EIGHTY-THREE before me personally came ROBERT JAMES AND LETITIA JAMES, HIS WIFE to me personally known and known to me to be the individual described in and who executed the foregoing instrument and acknowledged that executed the same

## EXHIBIT G

REEL 5580 PG 1798                                                L4221520

PIF

### NEW YORK DISCHARGE

KNOW ALL MEN BY THESE PRESENTS,

THAT    HomeSide Lending, Inc.

        McAllister Frwy
        San Antonio, TX  78216

Does hereby certify that the following Mortgage is paid, and does hereby consent that the same be discharged of record,

Mortgage dated the 20TH day of MAY, 1983, made by
ROBERT JAMES AND LETITIA JAMES, HIS WIFE

to KADILAC FUNDING LTD,
in the principal sum of $30300.00 and recorded on the 7TH day of JUNE, 1983 in Book/Reel 1539 of Mortgages, Page 1110, in the office of the Clerk of the County of NEW YORK CITY D, State of New York, Lot 7, Block 11975, Section 52 Township.

ASSIGNED FROM KADILAC FUNDING LTD. TO THE RICHARD GILL COMPANY ON 6/7/83, REC 6/27/83, RL 1545, PG 878; ASSIGNED FROM THE RICHARD GILL COMPANY TO BANCPLUS MORTGAGE CORP. ON 9/23/87, REC 11/12/87, RL 2491, PG 0502.

Property Address: ▇▇▇ INWOOD STREET JAMAICA, NY 11420
Which Mortgage has not been further assigned of record.

Dated APRIL 17, 2000
In presence of:

Attest:
*B Santellan*
B SANTELLAN
ASSISTANT SECRETARY

HomeSide Lending, Inc.
successor by merger to
BancPLUS Mortgage Corp.

*Nancy Staton*
NANCY STATON, ASSISTANT VICE PRESIDENT

STATE OF Texas      )
                    ) SS:
COUNTY OF Bexar    )