IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:25-CR-00122-JKW-DEM |
| LETITIA A. JAMES | |
| Defendant. | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS INDICTMENT FOR VINDICTIVE AND SELECTIVE PROSECUTION**

# Table of Authorities

<div align="right">

**Page(s)**

</div>

## Cases

*Blackledge v. Perry*,
   417 U.S. 21 (1974) ................................................................................................. 9

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978) ........................................................................................... 9, 14

*People v. Trump Org., Inc.*,
   2022 WL 489625 (N.Y. Sup. Ct. Feb. 17, 2022) ............................................... 1, 14

*United States v. Armstrong*,
   517 U.S. 456 (1996) ....................................................................................... 6, 7, 17

*United States v. Aviv*,
   923 F. Supp. 35 (S.D.N.Y. 1996) .......................................................................... 12

*United States v. Biden*,
   728 F. Supp. 3d 1054 (C.D. Cal. 2024) ........................................... 1, 8, 10, 15, 23

*United States v. Biheiri*,
   341 F. Supp. 2d 593 (E.D. Va. 2004) ................................................................. 6, 16

*United States v. Campbell*,
   410 F.3d 456 (8th Cir. 2005) ............................................................................ 10, 14

*United States v. Chamberlain*,
   225 F.3d 655 (4th Cir. 2000) ................................................................................. 24

*United States v. Cooper*,
   617 F. App'x. 249 (4th Cir. 2015) ........................................................................... 9

<div align="center">

i

</div>

*United States v. Derrick,*
    163 F.3d 799 (4th Cir. 1998) ............................................................................ 24, 25

*United States v. Falk,*
    479 F.2d 616 (7th Cir. 2001) ............................................................................. 13

*United States v. Gilbert,*
    266 F.3d 1180 (9th Cir. 2001) ........................................................................... 11

*United States v. Gomez-Lopez,*
    62 F.3d 304 (9th Cir. 1995) ................................................................................. 9

*United States v. Goodson,*
    204 F.3d 508 (4th Cir. 2000) ............................................................................. 24

*United States v. Goodwin,*
    457 U.S. 368 (1982) ............................................................................... 8, 10, 17

*United States v. Greene,*
    697 F.2d 1229 (5th Cir. 1983) ...................................................................... 13, 20

*United States v. Greenwood,*
    796 F.2d 49 (4th Cir. 1986) .......................................................................... 17, 20

*United States v. Haggerty,*
    528 F. Supp. 1286 (D. Colo. 1981) ................................................................... 13

*United States v. Hastings,*
    126 F.3d 310 (4th Cir. 1997) ............................................................. 11, 15, 23, 24

*United States v. Jarrett,*
    447 F.3d 520  (7th Cir. 2006) ...................................................................... 15, 22

*United States v. Johnson,*
    171 F.3d 139 (2d Cir. 1999) .............................................................................. 10

*United States v. Johnson*,
    221 F.3d 83 (2d Cir. 2000) .................................................................. 13

*United States v. Koh*,
    199 F.3d 632 (2d Cir. 1999) ....................................................... 7, 9, 10, 12

*United States v. Lindh*,
    212 F. Supp. 2d 541 (E.D. Va. 2002) ................................... 7, 17, 18, 20, 21

*United States v. Lucas*,
    62 F. App'x 53 (4th Cir. 2003) ........................................................... 16

*United States v. Mathur*,
    2012 WL 3135532 (D. Nev. Aug. 1, 2012) .......................................... 10

*United States v. Meyer*,
    810 F.2d 1242 (D.C. Cir. 1987) ........................................................... 8

*United States v. Monsoor*,
    77 F.3d 1031 (7th Cir. 1996) ............................................................. 12

*United States v. Olvis*,
    97 F.3d 739 (4th Cir. 1996) ..................................................... 7, 15, 18, 19

*United States v. P.H.E., Inc.*,
    965 F.2d 848 (10th Cir. 1992) ...................................................... 12, 13

*United States v. Rivera*,
    58 F. App'x 1 (4th Cir. 2003) ............................................................. 16

*United States v. Ronald Lee*,
    906 F.2d 117 (4th Cir. 1990) ............................................................. 24

*United States v. Sanders*,
    211 F.3d 711 (4th Cir. 2000) ............................................................. 23

iii

*United States v. Spears*,
   159 F.3d 1081 (7th Cir. 1998) ........................................................ 11, 13

*United States v. Venable*,
   666 F.3d 893 (4th Cir. 2012) ........................................... 18, 19, 20, 23

*United States v. Villa*,
   70 F.4th 704 (4th Cir. 2023) ............................................ 2, 7, 8, 9, 11, 16

*United States v. Walker*,
   514 F. Supp. 294 (E.D. La. 1981) ...................................................... 9

*United States v. Williams*,
   47 F.3d 658 (4th Cir. 1995) ............................................................ 16

*United States v. Wilson*,
   262 F.3d 305 (4th Cir. 2001) ............................... 2, 6, 7, 8, 9, 10, 12, 16, 23

*United States v. Woods*,
   305 F. App'x 964 (4th Cir. 2009) ..................................................... 16

*United States v. Young*,
   231 F. Supp. 3d 33 (M.D. La. 2017) .................................................. 18

## **Statutes**

18 U.S.C. § 1014 ............................................................................ 3

18 U.S.C. § 1344 ............................................................................ 3

18 U.S.C. 3553 .............................................................................. 16

28 U.S.C. § 516 ............................................................................. 6

28 U.S.C. § 547 ............................................................................. 6

**<u>Constitutional Provisions</u>**

U.S. Const. art. II, § 3 ................................................................................................ 6

**<u>Other Authorities</u>**

*Virginia Rules of Professional Conduct 3.3* ............................................... 23

*Virginia Rules of Professional Conduct 3.4* ............................................... 23

*Vindicating Vindictiveness:  Prosecutorial Discretion and Plea Bargaining, Past and Future*, 123 Yale L.J. 1014 (2017) ......................................................... 9

## I.    <u>Summary Position</u>

Defendant made material misrepresentations in home-loan applications and a sworn affidavit about the type of home she was buying, her actions show she knew what she was doing, and she financially gained by getting a better mortgage rate of 3% rather than 3.815%. Dismissing a true bill based solely on evidence of public disputes between senior elected officials from different political parties finds no basis in the law and would have extraordinary ramifications. *Cf. People v. Trump Org., Inc.*, 2022 WL 489625, at *4 (N.Y. Sup. Ct. Feb. 17, 2022) ("As has often been said, that a prosecutor dislikes someone does not prevent a prosecution"). And news reports—on which Defendant bases the motion to dismiss—are not an appropriate justification for casting aside the findings of a grand jury. *See United States v. Biden*, 728 F. Supp. 3d 1054, 1097 n.42 (C.D. Cal. 2024) (vindictive- and selective-prosecution motion to dismiss ineffectively relied on "information sourced from the Internet, which is not evidence appropriate for consideration on a motion to dismiss. The motion may be denied on this basis."); *see also* Letter of Abbe Lowell to Attorney General Bondi, at 1, 3 (Apr. 24, 2025) (tacitly criticizing initial investigation into Defendant because it was based "on media reports" as "lack[ing] in any credible foundation"), *available at* https://ladd.law.wisc.edu/wp-content/uploads/sites/2354/2025/04/Abbe-Lowells-letter-to-DOJ.pdf ("Lowell Letter").

No evidence, let alone compelling evidence, demonstrates that the United States Attorney exhibited animus. Rather, according to Defendant's own submission, the United States Attorney was tasked with assessing whether Defendant could be charged: "If they are guilty, or if they should be charged, they should be charged." ECF No. 53 at 16 (quoting President Trump). Insufficient direct evidence requires circumstances demonstrating vindictiveness through indirect evidence, creating a rebuttable presumption. However, Defendant seemingly abandons this

argument, and as the Fourth Circuit has held time and again, a "presumption of vindictiveness will rarely, if ever, be applied to prosecutors' pretrial decisions." *United States v. Villa*, 70 F.4th 704, 711 (4th Cir. 2023); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) (presumption of vindictiveness "will rarely, if ever, be applied to prosecutors' pretrial decisions").

As its core, this case represents no more than a garden variety mortgage fraud prosecution. The Court is well-familiar with the United States Attorney's Office for the Eastern District of Virginia's prioritization of fraud cases, regardless of loss amounts, including mortgage fraud cases. *See, e.g.*, *United States v. Tayal*, 1:19-cr-176 (E.D. Va.) (prosecution of defendants for fraudulently "paying a mortgage at a lower rate," and making misrepresentations in affidavits concerning property-sale transactions in a short-sale scheme, ECF No. 1 at 5, 13);  Ex. 1 (listing several low-dollar fraud cases primarily brought by the Norfolk Division of the United States Attorney's Office, as well as mortgage fraud and theft cases, from 2021 to 2024).

The high-profile comparators Defendant offers are either outside of the Eastern District of Virginia's jurisdiction or reportedly innocent of criminal conduct.  Senator Roger Wicker is the only one of the purported comparators in the Eastern District of Virginia, and Defendant fails to inform the Court that *The New York Times* reported that Senator Wicker actually committed no fraud at all.  This omission exemplifies the danger of relying on selective news sources to dismiss an indictment: the facts are untested by various federal rules of procedure and evidence, and they are now the contradicted basis for the Attorney General of New York alleging potentially criminal conduct against a sitting United States Senator in a public filing in a federal court.

The remarks of presidents and state attorneys general are important, but they do not have any bearing on the evidence on which the United States and the grand jury have relied in proceeding with indictment.  Federal courts must not allow defendants to escape a facially valid

indictment supported by evidence because of public disputes between elected officials. To do so would infringe on the prosecution of individuals for whom probable cause of the commission of a crime exists and effectively immunize any defendant about whom an official negatively comments. The United States of America, by and through its attorneys, Lindsey Halligan, United States Attorney for the Eastern District of Virginia, and Roger A. Keller, Jr., Assistant United States Attorney, respectfully opposes Defendant's Motion to Dismiss Indictment for Vindictive and Selective Prosecution.

## II.    Procedural History

On October 9, 2025, a grand jury returned a two-count Indictment against Defendant for bank fraud in violation of 18 U.S.C. § 1344, and false statements to a financial institution in violation of 18 U.S.C. § 1014. ECF No. 1. Defendant moves to dismiss on two grounds: (1) vindictive prosecution; and (2) selective prosecution.

## III.    Facts

The facts of this case are straightforward and have clearly established probable cause of the commission of federal financial crimes. Defendant signed and submitted several home-loan application documents with false information, other official filings show Defendant knew it, and Defendant financially gained from the misrepresentations.

First, Defendant completed a Uniform Residential Loan Application ("URLA") in July 2020 to buy a "secondary residence" (the "Peronne residence") in Norfolk, Virginia. Ex. 2. The Peronne residence was actually an "investment property," which is important because falsely labeling the Peronne residence as a secondary residence mortgage allowed Defendant to get a better interest rate on the loan.

Second, this was no mistake. Defendant again made the same representation in another

3

URLA she completed for the same property in August 2020.  Ex. 3.

Third, Defendant represented that she intended to use the Peronne residence as a second home when she completed and signed, under oath, an affidavit of occupancy of the Peronne residence on August 17, 2020.  Ex. 4.  In that sworn affidavit, she attested that she would "occupy the property as a second home (vacation, etc.) while maintaining a principal residence elsewhere." *Id.*  She also acknowledged, again under oath, "that the Affidavit of Occupancy is given as a material inducement to cause [the mortgage company] to make a mortgage loan to [Defendant] . . . .".  *Id.*

Fourth, Defendant signed a document called a second home rider on August 17, 2020, which amended the mortgage.  Ex. 5.  In it, Defendant represented that she would:

> occupy and use the Property as [her] second home.  [She agreed to] maintain exclusive control over the occupancy of the property . . . and [would] not subject the Property to any . . other shared ownership arrangement . . that require[d her] . . . [to give] any other person or entity control over the occupancy or use of the Property.  Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year [beginning August 17, 2020] after the date of this Second Home Rider. . . .

*Id.*

Finally, in connection with the Peronne residence's purchase, Defendant submitted two insurance applications on August 25 and October 17, 2020.   In the first application, she represented: "Occupancy: Owner. Residence Usage: Non-Seasonal," and she took the action of marking several months in which the Peronne residence would be unoccupied. Ex. 6.  Under these representations, Defendant acknowledged: "I have read and acknowledge reviewing and understanding the contents of this page."  *Id.*  In the second application, she represented: "Adult Occupants, Occ. No. 1; Occupant Name Letitia A. James." Ex. 7.  Above her signature, Defendant again acknowledged that she "read this entire application, including the binder provision, before

signing." *Id.*

Defendant's actions show she knew the Peronne residence was not a secondary residence, but rather an investment property. Defendant stayed in hotels during visits to Norfolk despite representing that the Peronne residence was her secondary residence. Ex. 8. This is because the home was not treated as her secondary home at all. In fact, Defendant purchased the Peronne residence for a relative from whom she collected rent while enjoying the financial benefits of a lower mortgage rate. Ex. 9 (Schedule E showing rent). In September 2020, Defendant's relative registered several utilities in her own name. Ex. 10 (redacted to protect PII). Furthermore, in October 2020, the relative attempted to use the Peronne address to register to vote.

In official filings, Defendant at least twice stated the Peronne residence was actually an investment property, but never took steps to amend the material falsehoods on her mortgage documents. She represented that the Perrone residence was an investment property in her income taxes – including taking deductions consistent with investment property, not a secondary residence. These deductions demonstrate that Defendant never occupied nor intended to occupy the Peronne residence as the mortgage terms required. Defendant continued taking the investment property deductions for several years until in 2024 she told her accountant:

> Mar 28, 2024 at 4:28 PM
>
> I do not want to take deduction. It looks suspicious and I need to do everything according to the tax code.

The evidence demonstrating her knowledge does not stop there. Defendant listed the Peronne residence as an investment property—not a secondary residence—in the New York State financial disclosure form for public officials, even though it instructs officials "NOT [to] list any real property which is the primary or secondary personal residence of the reporting individual . . . .".

Ex. 11.  This was neither a benign mistake nor an innocent mix-up.  Defendant's actions show she knew the Peronne residence was an investment property.  It resulted in  a mortgage rate of nearly a percentage point less.

## IV.    Discussion

"The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws.  They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'"  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., Art. II, § 3); *see* 28 U.S.C. §§ 516, 547.  This means that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  *Id.* (citations and quotations omitted).  Therefore,

> the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.  In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to  prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) (citations and quotations omitted).

Nevertheless, "a prosecutor's discretion is subject to constitutional constraints," including the equal protection component of the Due Process Clause of the Fifth Amendment.  *Armstrong*, 517 U.S. at 464 (citations and quotations omitted).  "A narrowly-circumscribed but important exception to th[e] broad prosecutorial discretion is the rule that the decision to prosecute a defendant may not be exercised vindictively, that is, that the decision to prosecute may not be made in retaliation or in vengeance for the defendant's exercise of his rights under the law." *United States v. Biheiri*, 341 F. Supp. 2d 593, 598 (E.D. Va. 2004) (citations omitted).  Courts

6

acknowledge that "to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and . . . patently unconstitutional." *Id.* (citations and quotations omitted). Courts remain hesitant to review a decision to prosecute a defendant. *Armstrong*, 517 U.S. at 465.

> Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts. Such factors as strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine the prosecutorial effectiveness by revealing the Government's enforcement policy.

*Id.* (citations and quotations omitted).

Without sufficient direct evidence, it is nearly impossible to dismiss a claim for vindictive prosecution in a pretrial posture when probable cause has been found. *Villa*, 70 F.4th at 711; *see Wilson*, 262 F.3d at 315. *United States v. Koh*, 199 F.3d 632, 639 (2d Cir. 1999) (defendant who raised a vindictive-prosecution defense in a pretrial setting did not "base his claim on a presumption of vindictiveness, nor could he"). Neither claim here is "easily established. [They are] not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Lindh*, 212 F. Supp. 2d 541, 565 (E.D. Va. 2002) (selective prosecution). Both claims "must be supported by a showing sufficiently strong to overcome the presumption of regularity." *Wilson*, 262 F.3d at 315 (citing *Armstrong*, 517 U.S. at 468). This means that a "defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct. This standard is a rigorous one." *Id.* (citations and quotation omitted); *see United*

7

*States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (such motions "must support a . . . claim with clear evidence.  The standard is intended to be a demanding and rigorous one").  "[I]nformation sourced from the Internet," as referenced, "is not evidence appropriate for consideration on a motion to dismiss" for vindictive or selective prosecution.  *Biden*, 728 F. Supp. 3d at 1097 n.42.

### A.    Defendant's Vindictive Prosecution Claim Fails.

A vindictive prosecution claim requires a defendant to establish, through objective evidence, "that (1) the *prosecutor* acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus."  *Villa*, 70 F.4th at 710 (emphasis added) (citations and quotations omitted).  The first prong requires a defendant to prove a prosecutor's vindictive motive.  *Wilson*, 262 F.3d at 316.  The second prong requires clear evidence that the prosecutor "pursued the . . . prosecution solely to punish" the defendant.  *Id.* at 316.  Defendant's vindictive prosecution motion fails because she provides no evidence, let alone clear evidence, that: (1) the United States Attorney demonstrated vindictive animus; and (2) such non-existent animus was the sole cause for the two charges.[1]

### 1.    Defendant Fails to Provide Clear Evidence that the United States Attorney Showed Animus.

"Prosecutorial vindictiveness" is a "term of art with a precise and limited meaning."  *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987).  It does not refer to "a prosecutor's personal

---

[1]  When discussing the vindictive-prosecution defense, the Supreme Court has used sole-causation language.  *See United States v. Goodwin*, 457 U.S. 368, 380 n. 11 (1982) ("A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution").  The Fourth Circuit fluctuates between "but-for" and "solely."  *See*, *e.g.*, *Wilson* 262 F.3d at 314 ("the defendant would not have been prosecuted *but for* that animus") and (defendant must prove that the prosecutor "pursued the escape prosecution *solely* to punish" the defendant).  Under either verbiage, Defendant must prove that the prosecutor's animus was the sole cause of the charging decision – which she cannot do in this case.

spite or ill will toward an otherwise validly chargeable defendant." *United States v. Walker*, 514 F. Supp. 294, 311 (E.D. La. 1981); *see* Doug Lieb*, Vindicating Vindictiveness: Prosecutorial Discretion and Plea Bargaining, Past and Future*, 123 Yale L.G. 1014, 1017-1020 (2017) (describing the development of prosecutorial vindictiveness's "particularized" meaning). Vindictiveness, in the legal context, "could hardly be defined so broadly in a legal system that recognizes the legitimacy of retribution as a justification for punishment." *Walker*, 514 F. Supp. at 311. In the context of a vindictive-prosecution defense, "animus" or "vindictiveness" specifically refers to a narrower concept: prosecutorial action "whose objective is to penalize a person's reliance on his legal rights." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

### a.    No Clear Evidence Demonstrates Animus.

Defendant fails to first establish that "the *prosecutor* acted with genuine animus toward the defendant . . . ." *Villa*, 70 F.4th at 710 (emphasis added). Defendant must show that the United States Attorney "harbored vindictive animus" against Defendant. *Wilson*, 262 F.3d at 316; *see United States v. Cooper*, 617 F. App'x 249, 251 (4th Cir. 2015) (defendant adduced "no evidence to suggest that the Government official who actually made the decision to prosecute . . . was motivated by any impermissible consideration"); *United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995) (noting that the focus "is on the ultimate decision-maker"). A defendant must provide direct evidence of the prosecutor's animus or vindictive motive.[2] *Villa*, 70 F.4th at 710;

---

[2] Absent direct evidence, "a defendant may state a claim indirectly with evidence of circumstances from which an improper vindicative motive may be presumed. Such a presumption is warranted only by circumstances posing 'a realistic likelihood of vindictiveness' in 'all cases of the type presented.'" *Villa*, 70 F.4th at 710 (quoting *Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974)). For example, a presumption of vindictiveness generally arises where a prosecutor chooses "to bring more serious charges on retrial against a defendant who has successfully appealed his conviction and obtained a new trial. . . ." *Id.* Defendant "does not appear to base [her] claim on a presumption of vindictiveness, nor could [s]he." *Koh*, 199 F.3d at 639.

*Wilson*, 262 F.3d at 314.

"An example of objective evidence of a vindictive motive would be a prosecutor's statement that he or she is bringing a new charge in order to dissuade the defendant from exercising his or her legal rights." *United States v. Campbell*, 410 F.3d 456, 462 (8th Cir. 2005) (citation omitted). Such "a statement by the prosecutor . . . is available 'only in a rare case.'" *United States v. Johnson*, 171 F.3d 139, 140-41 (2d Cir. 1999) (quoting *Goodwin*, 457 U.S. at 380-81 & nn. 12-13, 19); *see Koh*, 199 F.3d at 640 (defendant "must demonstrate actual vindictiveness, which requires direct evidence, such as a statement by the prosecutor evidencing the vindictive motive") (citations and quotations omitted).

Defendant offers no direct evidence that the United States Attorney exhibited animus, and, in fact, appears to concede she has none. ECF No. 51 at 30 ("Ms. Halligan's comparative silence on these issues is immaterial . . ."). Defendant maintains that her prosecution is vindictive based on news reports involving others, which are insufficient. ECF No. 53 at 23, 36; *Biden*, 728 F. Supp. 3d at 1097 n.42; Lowell Letter at 1, 3; *see also United States v. Mathur*, 2012 WL 3135532, at *2 (D. Nev. Aug. 1, 2012) ("[R]umor, innuendo, and gossip" are not "sufficient to support . . . selective and vindictive prosecution claims."). Moreover, prosecutors may differ as to whether probable cause exists and, consequently, "a prosecutor should remain free before trial to exercise that broad discretion entrusted to him to determine the extent of societal interest in prosecution. An initial decision should not freeze future conduct." *Wilson*, 262 F.3d at 315 (citations and quotations omitted). Defendant has not presented direct evidence of the United States Attorney's animus.

> **b.    Defendant Fails to Provide Clear Evidence Necessary to Impute Alleged Animus of Others to the United States Attorney.**

Well-aware no direct evidence supports that the United States Attorney harbors any animus

10

or vindictive motive towards Defendant, she attempts to indirectly impute such animus.  She maintains that "the President and [the United States Attorney's] direct superiors at the Department of Justice used her as a 'stalking horse' for retaliation."  ECF No. 53 at 30.  The Fourth Circuit, however, has not adopted the "stalking horse" concept for vindictive and selective prosecutions even when investigators engaged in *unlawful* biases, let alone biases or practices that allegedly fall outside of formal Department of Justice guidelines or unwritten traditions.  *United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997) (stating the court would "not impute the unlawful biases of the investigating agents to persons ultimately responsible for the prosecution" while considering the principle that a prosecution "cannot be motivated by a suspect's exercise of constitutional rights through participation in political activity" including in circumstances when "there [was] some evidence of political animus").  Unquestionably, "the construct of collective knowledge is out of place in a search for vindictiveness *which is a motive personal to the prosecutor . . . .*".  *Villa*, 70 F.4th at 713 (emphasis added); *see also United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001) ("In all but the most extreme cases, it is only the biases and motivations of the prosecutor that are relevant"); *United States v. Spears*, 159 F.3d 1081, 1087 (7th Cir. 1998).

Even if the Court entertains Defendant's "stalking horse" argument, Defendant's own briefing establishes the concept's inapplicability to this case.  When courts entertain the imputed-animus theory in other contexts, they require a significant showing:  there must be "evidence that the federal prosecutor did not make the ultimate decision to bring the indictment . . .".  *Spears*, 159 F.3d at 1087.  There is no such evidence here.  For the "stalking horse" theory to apply, a defendant must connect the animus the non-charging official harbors to the prosecutor by "establish[ing] that the [non-charging official] in some way prevailed upon the prosecutor in

making the decision to seek an indictment." *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996).

Evidence that an investigation existed prior to the non-charging official's attempt to prevail upon the prosecutor significantly weakens a "stalking horse" argument. *Wilson*, 262 F.3d at 316-17 (deputy marshal in charging district opened a file before South Carolina U.S. Attorney asked North Carolina U.S. Attorney to consider prosecution defendant); *Koh*, 199 F.3d at 641 (prosecutorial decision "based on investigations conducted by the State Attorney General's Office *before* the receiver even approached the U.S. Attorney's Office, and on an independent investigation by the U.S. Attorney's Office lasting six months").[3]

In *Wilson*, a South Carolina United States Attorney sent an email to a North Carolina United States Attorney *explicitly* requesting indictment of a defendant. 262 F.3d at 310. But, the Fourth Circuit refused to impute the alleged animus or vindictive motive of the United States Attorney for South Carolina onto the North Carolina United States Attorney based, in part, on the fact that the North Carolina United States Attorney's office opened an investigatory file prior to receiving the South Carolina United States Attorney's request. *Id.* at 316-17.

Defendant's most-oft cited case, *United States v. P.H.E., Inc.*, is a misplaced, out-of-circuit decision more than 30 years old. 965 F.2d 848 (10th Cir. 1992). In *P.H.E.*, injunctive relief barred an Assistant United States Attorney from coordinating nationwide prosecution for distributing

---

[3] *United States v. Aviv*, 923 F. Supp. 35, 37 (S.D.N.Y. 1996) is consistent with the concept that even those courts who impute a non-charging official's vindictive motivation to a charging prosecutor, unlike the Fourth Circuit, only impute it when the investigative file is opened contemporaneous with or after the charging prosecutor upon whom the non-charging official prevails upon is in the office. *Aviv* noted that defendant "made an unusually strong showing" of animus or vindictive motive," – but ultimately failed to prove that he would not have been prosecuted – when "the FBI agent in charge of the case," *i.e.*, the agent who presented it, was involved in the case at bar and "was responsible for a grand jury investigation" in the previous case in parallel lawsuit.

constitutionally protected pornographic materials, effectively finding any such prosecution to be in "bad faith" or vindictive because the defendant was exercising its First Amendment rights.  *Id.* at 857-58.  The Assistant United States Attorney nevertheless employed a colleague to indict *after* the Court entered the preliminary injunction.  *Id.* at 859-60.  Defendant has shown no basis that the United States was enjoined from conduct specific to her, or that she was constitutionally or statutorily permitted to commit mortgage fraud, and this case is inapposite.  Reliance on *United States v. Johnson*, 221 F.3d 83, 94 (2d Cir. 2000), is also misplaced for the exact reason Defendant quotes:  the statement of the *prosecutor* demonstrated vindictiveness.  ECF No. 53 at 24.

Similarly, Defendant argues that an improper purpose exists where "the 'government ha[s] followed unusual discretionary procedures in deciding to prosecute.'"  ECF 53 at 45 (citing *United States v. Greene*, 697 F.2d 1229, 1236 (5th Cir. 1983)).  However, the cases on which *Greene* relies are over 40 years old, out-of-circuit, and distinguishable.  These selective prosecution cases (not vindictive prosecution cases) assessed the claims where a court previously determines that deviations from standard practice affect the indictment's integrity.  *See United States v. Falk*, 479 F.2d 616, 622 (7th Cir. 1973) (indictment expressly for assisting with war protests approved by the Assistant United States Attorney through the Department of Justice in Washington, D.C.); *United States v. Haggerty*, 528 F. Supp. 1286, 1293-94 (D. Colo. 1981) (Department of Justice removed prosecutorial discretion from 19 U.S. Attorney's offices when it selected – before the commission of any crime – union officials for potential prosecution because they engaged in First Amendment union activity before a strike).

Defendant has not presented sufficient "evidence that [the United States Attorney] did not make the ultimate decision to bring the indictment."  *See Spears*, 159 F.3d at 1087.  Nor has she presented direct evidence of the U.S. Attorney's animus.  The Court's consideration of the

vindictive prosecution claim should end there.

        c.      **Defendant Fails to Provide Clear Evidence that Statements of Others Are Designed to Dissuade or Penalize.**

Finally, even if the Court imputes animus—it should not—Defendant's claim still fails. "Vindictiveness," as courts use that term, refers to prosecutorial action "whose objective is to penalize a person's reliance on his legal rights." *Bordenkircher*, 434 U.S at 363. "[B]ringing a new charge in order to dissuade the defendant from exercising his or her legal rights" exemplifies vindictiveness. *Campbell*, 410 F.3d at 462. The documents attached hereto and the grand jury's finding of probable cause "undercut[ ] the notion that this [Indictment] is based on personal animus, not facts and law." *Trump Org., Inc.*, 2022 WL 489625, at *4. "As has often been said, that a prosecutor dislikes someone does not prevent a prosecution." *Id.*

Defendant cites or quotes President Trump's remarks about Defendant, which span commentary ranging from disdain to deference. *See* ECF No. 53 at 4-8; *see also id.* at 21 ("If they are guilty, or if they should be charged, they should be charged."). When President Trump was asked about the Department of Justice indicting Defendant, he stated: "I look at the facts like everybody else. You read the facts, and to me, she looks terrible, she looks like she's very guilty, but that's going to be up to the DOJ." *Id.; see also* 60 Minutes Overtime, CBS News, *'Is This Retribution?' Norah O'Donnell Confronts Trump On Whether He's Using the DOJ to Punish His Foes* (Nov. 2, 2025), https://www.cbsnews.com/amp/news/read-full-transcript-noral-odonnell-60-minutes-interview-with-president-trump (President Trump responding "No, and not in any way, shape, or form" after being asked whether he instructed "the Department of Justice to go after them.").[4]

_____

[4] Defendant contends the creation of the Weaponization Working Group demonstrates vindictiveness. This issue is of no importance to the direct matter before the Court. Unlike Defendant's statements targeting the President pre-election when she had not seen a shred of

Defendant makes much of the involvement of Ed Martin.  Martin is not the United States Attorney, he did not sign the Indictment, and he was not the decision-maker in this process.  *Biden*, 728 F. Supp. 3d at 1100 ("publicly taking credit for a prosecution hardly proves the boaster's conduct had any effect on the presumedly independent prosecutor.").  Defendant maintains Martin "planned to use his authority to expose and discredit opponents of the President whom he believes to be guilty. "  ECF No. 53 at 16. Tellingly, Defendant describes Martin's perspective on charging decisions versus political activity: "[I]f they *can be* charged, we'll charge them."  ECF No. 53-2 at 21 (emphasis added).   Stated analogously by the Fourth Circuit, Department of Justice prosecutors:

> don't choose individuals to violate the law.  They chose to violate the law themselves.   And when they violate the law, if we can prove it, we prosecute[ ] them, regardless of their race, regardless of their sex, regardless of where they were born, or in what family they were raised in.

*Olvis*, 97 F.3d at 742.  Defendant's remaining complaints involving Martin do not support a vindictive prosecution claim.  For example, Defendant contends that he communicated with the President and took a photograph of Defendant's New York residence.   These are neither constitutional violations, nor violations of law at all.  *Hastings*, 126 F.3d at 314 (even *unlawful* biases insufficient to impute).  The Fourth Circuit is not alone in this perspective: "Failure to follow internal operating policy in prosecuting is not, by itself, evidence of vindictive prosecution . . . . Case law, not internal handbooks, provides the guidance for whether a prosecutor has crossed the line for pursing an indictment."  *United States v. Jarrett*, 447 F.3d 520, 529  (7th Cir. 2006).

---

evidence, *e.g.*, "I will never be afraid to challenge this illegitimate President," the relevant and higher standard for assessing this claim is whether the charging prosecutor brought the claim to punish a defendant for exercising his First Amendment rights.  Defendant adduces no such evidence – clear or otherwise – in this case.  Sonia Moghe, CNN, "The New York AG's first 100 days of war against Trump" (Apr. 10, 2019), https://www.cnn.com/2019/04/10-politics-letitia-tish-james-new-york-attorney-general-trump.

Similarly, Defendant contends that Martin's target letter—to an elected official in the face of evidence giving rise to probable cause that the official committed at least two federal crimes — demonstrates vindictiveness.  The letter is the opposite.  It expressly discloses the government's perspective on how Defendant can timely accept responsibility and demonstrate respect for the law, which is a routinely discussed point of plea negotiations and a factor courts must consider at sentencing.  18 U.S.C. § 3553(a); *cf. United States v. Williams*, 47 F.3d 658, 663 (4th Cir. 1995) ("in the context of plea negotiations, a prosecutor may legitimately threaten a more severe indictment in order to pressure a defendant to plead guilty . . .").  For all Defendant's talk about Ed Martin, she wholly fails to explain why his motives should be imputed to the U.S. Attorney.

### 2.    Defendant Fails to Adduce Clear Evidence of Being Charged Only Because of Animus.

To prove vindictive prosecution, a Defendant must establish by clear evidence that the animus or vindictive motivation was the sole or but-for reason for the prosecutor bringing the charges.  *Villa*, 70 F.4th at 710 ("but for"); *Wilson*, 262 F.3d at 361 ("solely").  However, where the prosecution articulates "valid federal interests in prosecuting" a defendant "in federal court," the defendant's vindictive prosecution claim fails.  *United States v. Rivera*, 58 F. App'x 1, 4 (4th Cir. 2003); *see also United States v. Woods*, 305 F. App'x 964, 967 (4th Cir. 2009) ("the Government clearly had probable cause to believe that [the defendant] committed the charged offenses"); *United States v. Lucas*, 62 F. App'x 53, 56 (4th Cir. 2003) ("the Government has provided rational explanations for its pursuit of the firearm charge").

The existence of probable cause is a valid, non-vindictive reason for charging Defendant.  *Woods*, 305 F. App'x at 967.  Moreover, it is standard "to hold defendant accountable for the full range of [her] criminal conduct" and is a legitimate, non-vindictive, reason for charging.  *Biheiri*, 341 F. Supp. 2d at 599 (the government's desire "to hold defendant accountable for the full range

16

of his crimes" was a non-retaliatory reason for charging defendant).  Therefore, Defendant fails to prove the second vindictive prosecution prong, and her vindictive prosecution claim fails.

Defendant is a state-wide elected official whose conduct implicates multiple key priorities of the United States:  public integrity, bank fraud, tax fraud, and misrepresentations to financial institutions.  The United States Attorney's Office for the Eastern District of Virginia routinely prioritizes these cases, and the combination of public-integrity and fraud charges raises a significant federal interest.  *See* Ex. 1 (low-dollar fraud cases, mortgage fraud cases, and theft cases primarily in Norfolk Division of U.S. Attorney's Office from 2021 to 2024).  Even if the Court finds "genuine animus," Defendant cannot establish that her charges were brought "solely to 'penalize'" her for exercising a protected right.  *See Goodwin*, 457 U.S. at 380 n.12.

### B.     Defendant's Selective Prosecution Claim Fails.

No clear evidence meets the high standard that, in this case, "the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465; *see Lindh*, 212 F. Supp. 2d at 565 (same).  To prevail, "a defendant must show clear evidence of both discriminatory effect and discriminatory purpose."  *Id.* Defendant fails to "establish a discriminatory effect by showing that similarly situated individuals outside of the protected group were not prosecuted" under the first element. *Id.*  "Such a showing is an absolute requirement." *Id.*  To meet the second prong, a defendant "must show that the decision to prosecute was invidious or in bad faith." *Id.* at 567.  This means that the defendant must show by clear evidence that the decision to prosecute her was "based upon such impermissible considerations as race, religion, or the desire to exercise his constitutional rights." *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986).

### 1.    Defendant Fails to Adduce Clear Evidence Regarding Comparators.

A defendant "must establish a discriminatory effect by showing that similarly situated individuals outside the group were not prosecuted." *Lindh*, 212 F. Supp. 2d at 565. Furthermore, "[d]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Venable*, 666 F.3d 893, 900-01 (4th Cir. 2012). In determining whether others are similarly situated, the Fourth Circuit "rejected a narrow approach to relevant factors to be considered when deciding whether person are similarly situated for prosecutorial decisions." *Id.* (citations and quotations omitted). Instead,

> the goal of identifying a similarly situated class of law breakers is to isolate the factor allegedly subject to impermissible discrimination. If all other things are equal, the prosecution of only those persons to whom the factor applies gives rise to an inference of discrimination. But where the comparison group has less in common with the defendant, then other factors may very well play a part in the prosecution.

*Olvis*, 97 F.3d at 744 (citations and quotations omitted). The Fourth Circuit has identified a list of non-exhaustive factors to include:

> (1) a prosecutor's decision to offer immunity to an equally culpable defendant because that defendant may choose to cooperate and expose more criminal activity; (2) the strength of the evidence against a particular defendant; (3) the defendant's role in the crime; (4) whether the defendant is being prosecuted by other state authorities; (5) the defendant's candor and willingness to plead guilty; (6) the amount of resources required to convict a defendant; (7) the extent of prosecutorial resources; (8) the potential impact of a prosecution on related investigations and prosecution; and (9) prosecutorial priorities for addressing specific types of illegal conduct.

*Venable*, 666 F.3d at 901. The Court should also consider whether the proposed members of the group are subject to the jurisdiction of the relevant United State Attorney's office. *United States v. Young*, 231 F. Supp. 3d 33, 102 (M.D. La. 2017) (proposed class member was not comparable because he was not subject to the jurisdiction of the relevant United State Attorney's office). Such

a factor is relevant because without, jurisdiction, "the United States Attorney's office, which exercised jurisdiction over [the defendant] never had occasion to exercise its prosecutorial jurisdiction." *Venable*, 666 F.3d at 901; *see* ECF No. 53 at 41 (the "most critical [factors are] that the individuals engaged in similar conduct, and in similar roles, *locations*, or in the strength of the evidence against them") (emphasis added) (citing *Olvis*, 97 F.3d at 744)).

The Court need not even reach the nine factors listed above. For comparators, Defendant proposes other high-profile political appointees or elected officials who allegedly materially misrepresented facts on loan applications: Texas Attorney General Ken Paxton, Senator Roger Wicker, Secretary of the Treasury Scott Bessent, Secretary of Labor Lori Michelle Chavez-DeRemer, Secretary of Transportation Sean Duffy, and Environmental Protection Agency Administrator Lee Zeldin. ECF No. 51 at 41-43.[5] These comparators rise and fall with Defendant's failure to even allege that jurisdiction exists over any of them except Senator Roger Wicker. *Venable*, 666 F.3d at 900-01 (jurisdiction and lack thereof is a legitimate prosecutorial factor to consider).

The allegation against the remaining proposed comparator, Senator Wicker, is a misrepresentation to the Court. The Attorney General of the State of New York claims that a United States Senator committed fraud based on an article that says, quite plainly, the exact opposite: "Mr. Wicker's office provided *The Times* with private loan documents showing that he had actually attested that his Alexandria property like another unit he owns in the same building, was to be used as a second-home investment property."[6] The article goes on to clearly detail the

---

[5] According to Defendant's Internet article, Labor Secretary Lori Chavez-DeRemer's residences are in Arizona, Transportation Secretary Duffy maintains residences in New Jersey and Washington, D.C., and EPA Administrator Zeldin has places in Long Island and Washington, D.C. ECF No. 53 at 43 n.64.

[6] THE NEW YORK TIMES, *Deception? Conflicting Paperwork? Clerical Error? How a*

mistaken reporting, explaining how a clerical error caused the misunderstanding. *Id.* In no uncertain terms, Senator Wicker is not implicated in the report. While inadvertent mistakes occur in the briefing process – and the United States does not allege bad faith – this is a cornerstone argument in a motion to dismiss an indictment for alleged constitutional harm.

The priorities of the United States Attorney's Office, as discussed and detailed, align with this straightforward prosecution. Ex. 1. Moreover, and to be clear, if an elected official commits fraud in the Eastern District of Virginia, they should be investigated regardless of political party. Defendant's failure to identify similarly situated individuals who were not prosecuted is fatal to her selective prosecution claim.

**2. Defendant Fails to Adduce Clear Evidence of Discriminatory Intent.**

An individual claiming selective prosecution must also demonstrate "that the decision to prosecute was invidious or in bad faith." *Venable*, 666 F.3d at 900. This means that the defendant must establish by clear evidence that the prosecution is "based upon such impermissible considerations as race, religion, or the desire to exercise his constitutional rights." *Greenwood*, 796 F.2d at 52. Race and religion are not implicated here. *Lindh*, 212 F. Supp. 2d at 567; *contra Greene*, 697 F.2d at 1236 (first examining whether defendants were singled out for exercising their First Amendment rights, and then determining whether the United States deviated from its usual discretionary practice).

First, Defendant was not charged with the crime with which she was charged for exercising constitutional rights. The United States Attorney's Office for the Eastern District of Virginia charged Defendant because the evidence shows she committed mortgage fraud. Second, she

---

*Politician's Mortgages Can Get Muddy* (Sept. 15, 2025), https://www.nytimes.com/2025/09/15/us/politics/mortgages-politicians-paperwork-confusion.html.

adduces no clear evidence of institutional irregularities sufficient to question the Indictment's integrity.

Defendant avers, in summary, that: (1) Federal Housing Finance Agency ("FHFA") Director William Pulte exceeded the FHFA's inspector general's authority by referring Defendant for prosecution to DOJ; (2) Pulte coordinated with Martin; (3) President Trump and Martin spoke directly; (4) Martin visited Defendant's Brooklyn residence with a photographer, disregarding DOJ policies; and (5) the United States Attorney dismissed career prosecutors because they did not believe that probable cause existed to charge Defendant. *See* ECF No. 53 at 15-22 & n.16.

These arguments are easily explained and dismissed. First, Pulte's referral admittedly did not involve "the Peronne Property at issue in the indictment." ECF No. 53 at 15; ECF No. 53-6. The facts that are the basis for probable cause of the commission of two federal crimes are not those which Pulte referred; in fact, while it remains to be seen whether those facts constitute Rule 404(b) evidence, the facts on which the United States Attorney based the charges have nothing to do with the Sterling property in Norfolk, Virginia, or property in Brooklyn, New York. ECF No. 53-6. This simple yet critical point shows that the United States Attorney declined to adopt the theory set forth by an alleged vindictive actor.

Second, even crediting news reports about Martin's communications—which are inappropriate to consider in the context of a motion to dismiss an indictment—Martin is not a case agent or a line Assistant United States Attorney; rather, he was previously appointed as the Interim United States Attorney for the District of Columbia and is the Director of the Weaponization Working Group. He has a leadership role in the Administration. *Lindh*, 212 F. Supp. 3d at 567-68 (simply because "the President, Attorney General, and other high-level officials were involved in the decision to prosecute him . . . does not mean that these persons had a discriminatory purpose

or intent").[7]

Given the President's comments about charging Defendant *if she should be charged*, it stands to reason that an employee would communicate the approach. Even still, Defendant's references to Martin's social media and communications demonstrate at most an unsubstantiated "[f]ailure to follow internal operating policy," which "is not, by itself, evidence of" an impermissible purpose. *Jarrett*, 447 F.3d at 529.

Last, the employment decisions of the United States Attorney have no bearing on this case, nor should they. The undersigned has represented compliance with the Due Process Protections Act and *Brady v. Maryland*. Beyond those foundational and important considerations, as well as compliance with Rule 16 and the Court's Orders, internal deliberations on the substantive merits of a prosecution are precisely that: internal. And any internal recommendation of a different course of action would not be a sufficient basis to support dismissal. A grand jury assessed the evidence, and a grand jury found probable cause exists that two federal crimes were committed.

The rationale described above also favors denying the motion for discovery and an evidentiary hearing. "Because discovery imposes high costs on the government, the standard for obtaining discovery in support of a selective prosecution claim is only slightly lower than for a dismissal of the indictment; rather than presenting clear evidence, the defendant must produce some evidence making a credible showing of both discriminatory effect and discriminatory intent."

---

[7] Even previous administrations' White House/Department of Justice communications policies left room for significantly varying interpretation of when exactly communications between the Department and the White House were acceptable. Officials from the Department of Justice could communicate with the White House when "doing so [was] important for the performance of the President's duties and appropriate from a law enforcement perspective." Memorandum, Department of Justice Communications with the White House, Department of Justice (July 21, 2021),https://www.justice.gov/oip/foia-library/foia-processed/general_topics/ag_memo_wh_communications_03_02_22/dl.

*Venable*, 666 F.3d at 900; *see United States v. Sanders*, 211 F.3d 711, 717 (4th Cir. 2000) (vindictive and selective discovery standard is the same).

This means that even before a court allows a defendant to have discovery on the government's prosecutorial decision on a vindictive or selective prosecution case, "the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct. The standard is a rigorous one." *Wilson*, 262 F.3d at 315. The barrier to discovery in a vindictive or selective prosecution case is high "because discovery imposes many of the costs present when the government must respond to a prima facie case of selective prosecution; it diverts governmental resources and discloses prosecutorial strategies." *Id.*

Defendant's entire premise for the motion relies on news reports and social media posts having nothing to do with the United States Attorney, and which Defendant already has. Defendant must "offer[] credible evidence to prove the selective prosecution claim" and be entitled to further discovery. *Hastings*, 126 F.3d at 314. As discussed, news reports are insufficient bases to dismiss an indictment. *Biden*, 728 F. Supp. 3d at 1097 n.42; *cf.* Lowell Letter at 1, 3 (investigation into Defendant purportedly "lack[ed] any credible foundation" when based "on media reports"). As Defendant already has the social media posts and news reports, it is unclear to what else Defendant should be entitled. Regardless, there is no basis to provide discovery at this juncture.[8] Additionally, none of the social media posts "actually state that [Defendant's] political affiliation is the reason for pursuit of the case against [her]." *Hastings*, 126 F.3d at 314. The underlying bases for investigation into Defendant, as Defendant concedes, arose from a government housing regulator's referral concerning the propriety of her housing purchases. *Cf.*

---

[8]  Similarly, the United States filed the November 4, 2025, Notice [ECF 46] to comply with Virginia Rules of Professional Conduct 3.3(a)(1) and 3.4(d) not to suggest discoverable material exists.

*Hastings*, 126 F.3d at 314 ("property, substantial earnings, lifestyle, and repeated failure to file tax returns led to the decision to prosecute.").

### C.    REMEDY

Should the Court find the Indictment was unconstitutionally vindictive or selective, the appropriate remedy would be a dismissal without prejudice. Because "[t]he dismissal of an indictment altogether clearly thwarts the public's interest in the enforcement of its criminal laws" in a "profound and lasting way," a court may not dismiss an indictment with prejudice based on prosecutorial misconduct without first finding the defendant was prejudiced. *United States v. Derrick*, 163 F.3d 799, 807 (4th Cir. 1998). That is true even where the court finds a "deliberate" violation or "egregious" prosecutorial misconduct, neither of which is present here. *United States v. Ronald Lee*, 906 F.2d 117, 120 (4th Cir. 1990); *United States v. Chamberlain*, 225 F.3d 655, at *2 (4th Cir. 2000) (Table).

Defendant effectively claims that this Court should dismiss the Indictment with prejudice because *all* federal prosecutors are prejudiced. ECF No. 53 at 47 ("With AG Bondi at the helm of the Department of Justice and President Trump in the White House, it would be impossible for new charges to avoid the poison of retributive motive"). She argues that it should exercise its "supervisory powers" and dismiss the Indictment with prejudice – even if she fails to produce clear evidence of vindictive or selective prosecution – because the *sole* motivation of *any* federal prosecutor charging mortgage fraud is Defendant's exercise of her constitutional and statutory rights. *Id.* at 46-47. This argument is fatally flawed and does not warrant the "harsh remedy" of dismissal with prejudice. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000).

A defendant seeking a dismissal of an indictment with prejudice must show more than an error occurred. She must show she suffered prejudice. *Derrick*, 163 F.3d at 807. Defendant's

argument puts her interest – being allowed to commit mortgage fraud without any repercussions – in front of the public's interest in criminal law enforcement. The public – not Defendant – suffers prejudice because Defendant cannot be held accountable for her crimes even though a duly constituted grand jury found probable cause that she committed the indicted offenses. Dismissing the Indictment with prejudice would reach the very result the Fourth Circuit has repeatedly warned courts against: "thwart[ing] the public's interest in the enforcement of its criminal laws." *Derrick*, 163 F.3d at 807. Dismissal with prejudice is unwarranted.

## V.  <u>Conclusion</u>

For the foregoing reasons, the United States respectfully requests that the Court deny the motion to dismiss.

<div style="margin-left:40%;">

Respectfully submitted,

Lindsey Halligan
United States Attorney

By: _____/s/_____
Roger A. Keller, Jr.
Missouri Bar #42541
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Phone: (757) 441-6331
Facsimile: (757) 441-6689
E-Mail: Roger.Keller@usdoj.gov

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of November 2025, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to all counsel of record.


By: _____/s/_____

Roger A. Keller, Jr.
Assistant United States Attorney